Epstein *v.* Executive Secretary of the Board of Selectmen of Sharon.

ELIOT EPSTEIN & another[1] *vs.* EXECUTIVE SECRETARY OF
THE BOARD OF SELECTMEN OF SHARON.

Norfolk. March 13, 1986. — April 23, 1986.

Present: KASS, KAPLAN, & FINE, JJ.

*Jurisdiction,* Water charge. *Municipal Corporations,* Water rates.

An action to recover overpayments for water supplied by a municipality was
properly brought in the small claims session of a District Court. [137-138]

CIVIL ACTION commenced in the Stoughton Division of the
District Court Department on November 7, 1984.

On appeal to the Superior Court Department, a motion to
dismiss was heard by *Paul K. Connolly, J.*

*Eliot Epstein,* pro se.

*Manuel Katz,* for the defendant, submitted a brief.

KASS, J. We hold that persons who seek to recover overpay-
ments for water supplied by a municipality are not limited to
seeking relief from the Appellate Tax Board.

For successive years Esther and Eliot Epstein received water
bills from the town of Sharon which reflected mysteriously
escalating consumption of water in their home at 45 Eisenhower
Drive. Their bill for the first six months of 1984 charged them
for 117,000 gallons, an average daily use of 650 gallons. It is
not disputed that this was six times the national average. The
Epsteins nonetheless timely paid all their water bills. They
also complained to the town and requested a test of their water
meter. See G. L. c. 40, § 39I.[2]

---

[1] Esther Epstein.

[2] Section 39I, inserted by St. 1958, c. 527, § 1, entitles any person using
water supplied by a city, town, or district to have the meter tested for
accuracy. If the meter has malfunctioned so as to overcharge the customer
"the amount of such excess shall forthwith be . . . remitted to him if he
has paid the same."

Town inspectors said the meter worked within tolerable limits. There was potent circumstantial evidence to the contrary: when the town installed a new meter the Epsteins measured consumption sank to a daily average use of eighty-five gallons, about one-eighth of what previously had been attributed to them. Pressed in writing by the Epsteins for reimbursement, the town refused to make any payment and the Epsteins brought an action in the District Court. See G. L. c. 218, § 19, as amended by St. 1975, c. 377, § 4. They claimed an overpayment of $570.75 and, thus, were able to employ the small claims procedure. See G. L. c. 218, § 21.

A judge of the District Court found for the plaintiffs and entered judgment for them in the amount of $550, plus $11.25 in costs. The town claimed a trial in the Superior Court. See G. L. c. 218, § 23. Before trial, the town moved to dismiss the complaint and that motion was denied by a judge of the Superior Court. The town next suffered a default judgment (entered by a second Superior Court judge) for failure to appear at a conciliation conference. A third Superior Court judge allowed the town's motion to vacate judgment and allowed a renewed motion to dismiss the complaint for lack of subject matter jurisdiction. Judgment was entered accordingly. Whether the earlier motion to dismiss had been brought on the same ground does not appear from the record.

If the District Court or the Superior Court lacked subject matter jurisdiction, then the town may raise the issue on a motion to vacate judgment, or on appeal, even if the point has not been previously urged. *Litton Business Syss., Inc.* v. *Commissioner of Rev.,* 383 Mass. 619, 622 (1981). The third Superior Court judge was empowered to reconsider the issue, although not bound to do so. See *Peterson* v. *Hopson,* 306 Mass. 597, 601 (1940); *Serody* v. *Serody,* 19 Mass. App. Ct. 411, 412 (1985).

The third judge offered no reason for dismissing the complaint. We may infer that he embraced the argument made by the town. The thread of that argument was that the collection of water rates was governed by G. L. c. 40, §§ 42A through 42I; that, specifically, under § 42E, as appearing in St. 1941,

c. 380, § 5, "[a]n owner of real estate aggrieved by a charge imposed . . . under [§§ 42A to 42F] . . . may apply for an abatement . . . with the board . . . having control of the water department . . . ; [that] . . . the provisions of chapter fifty-nine relative to the abatement of taxes by assessors shall apply" and that if the petition for abatement is denied, the owner may appeal to the Appellate Tax Board.

What the town overlooks is that §§ 42A-42E deal exclusively with the collection of water charges if they remain unpaid and the status of unpaid charges as liens. Thus, § 42A, as amended by St. 1954, c. 487, § 1, provides that water charges "not paid on or before their due date . . . shall be a lien" upon the real estate to which the water was supplied. A lien for water rates is not a tax; it is a device to facilitate collection of an important public charge. *Loring* v. *Commissioner of Pub. Works,* 264 Mass. 460, 465, 468 (1928). Section 42E lays out a procedure of abatement and appeals analogous to that available for tax relief, but it relates, as we have noted, to a charge under §§ 42A through 42F, i.e., an unpaid charge. Here, the Epsteins had promptly paid their water bills.

Having paid their water bills on or before their due dates, the Epsteins are entitled to the reimbursement provided for in G. L. c. 40, § 39I, and may vindicate that right in the District Court, which, except as otherwise provided in G. L. c. 218, has jurisdiction of all civil actions in which money damages are sought. Indeed, a customer who had paid a water bill would fit uneasily within the framework of G. L. c. 40, §§ 42A through 42F.

Unlike the remedies provided in connection with private water companies, there is no redress before the Department of Public Utilities concerning faulty meters. Compare G. L. c. 165, § 10. *Sears, Roebuck & Co.* v. *Somerville,* 363 Mass. 756 (1973), upon which the town heavily relies, states principles of no applicability to this case. To be sure, the Appellate Tax Board is assumed to have specialized expertise to deal with cases involving taxes and the ability to consolidate like cases from a single communty. *Id.* at 759. The board has no self-evident skill to treat of a malfunctioning water meter. That

is the sort of idiosyncratic question of fact which a court is equipped to handle. When the amount in controversy is modest, as here, the small claims procedure provides a means by which a citizen, without incurring a lawyer's fee, may have the controversy simply and expeditiously resolved. See *Travis* v. *McDonald,* 397 Mass. 230, 232-233 (1986).

The judgment dismissing the complaint is vacated. A new judgment shall be entered for the plaintiffs in accordance with the judgment entered on the Superior Court docket on June 5, 1985, together with interest from that date. The plaintiffs shall have double costs of their appeal.

*So ordered.*