PASQUALE FRANCHI, trustee,[1] & another[2] *vs.*
JOHN J. STELLA, JR.[3]

No. 95-P-1095.

Middlesex. December 3, 1996. - February 26, 1997.

Present: PERRETTA, KASS, & JACOBS, JJ.

*Broker,* Insurance. *Insurance,* Broker, Contractor's insurance. *Negligence,* Proximate cause. *Damages,* Remittitur, Attorney's fees. *Practice, Criminal,* New trial. *Judge.*

In an action brought against an insurance broker for damages resulting from an unanticipated and unnoticed endorsement in a builders' risk insurance policy, the defendant's motion for judgment notwithstanding the verdict was correctly denied, where the plaintiff established that the defendant's negligence in procuring the policy had provided the insurer with grounds, later rebutted, to disclaim liability on the policy, causing the plaintiff harm. [255]

A Superior Court judge had authority to allow a motion for a new trial on damages or to order a further remittitur in a civil matter before final judgment had entered, and where the judge in a civil action had misapprehended her authority on that issue, the matter was remanded for a new trial on the issue of damages. [255-258]

CIVIL ACTION commenced in the Superior Court Department on September 5, 1989.

The case was tried before *Katherine Liacos Izzo,* J.

*Barbara A. H. Smith* for the defendant.

*Anil Maden* for the plaintiffs.

KASS, J. We deal in this case primarily with: (1) the liability of an insurance broker for damages to his customer for

---

[1]Of Haverhill Realty Development Trust.

[2]Eastern Builders Co., Inc.

[3]In the original action, a primary defendant was United Capitol Insurance Co. As the opinion sets forth, that insurance company has settled with the plaintiffs and is the assignee of such rights as the plaintiffs have against Stella.

the inclusion of an unanticipated and unnoticed "protective safeguards endorsement" in a builders' risk insurance policy; and (2) the authority of a trial judge to order a new trial (on damages) after the plaintiff has accepted a remittitur offered by the judge.

*Facts.*[4] Just before acquiring three old factory buildings on Washington Street in Haverhill during September, 1988, Haverhill Realty Development Trust ("HRDT") took steps to insure the property against damage to the real property (and personal property on it) during construction. The insurance was to be for the benefit of HRDT and Eastern Builders Co., Inc., which, as general contractor, was doing the work of converting the property into residences, stores, and offices. Pasquale Franchi was the trustee of HRDT and also the controlling stockholder and principal officer of Eastern. We sometimes refer to the plaintiffs collectively as "Franchi."

Arrangements for insurance were initiated for Franchi by his bookkeeper, Jean Whitney Goodwin, with a telephone call to John J. Stella, Jr. (doing business as John J. Stella Insurance Agency). Stella had been handling most of Franchi's insurance business for eight to ten years.

As Stella went about applying for insurance, he inquired whether there would be a fence around the work site, a question that Goodwin passed on to Louis Franchi (Pasquale's son). Louis responded that there was no fence then but that there would be during construction. Stella also asked whether there was a mortgage on the property, to which Goodwin, in like fashion, responded that there would be when construction activity began, adding that Franchi generally obtained construction loans from Guaranty First Bank & Trust Company. The amount of insurance was to be $1,000,000 for the three existing buildings and $3,000,000 for the construction improvements.

Stella placed the coverage requested with United Capitol Insurance Company (United) through Montgomery and Collins, Inc., a "special insurance broker" (a statutory term) licensed under G. L. c. 175, § 168, to purchase insurance policies from companies that are not, in the ordinary course,

---

[4]We base our recitation of the pertinent facts on what the jury might have found, reading the evidence in the light most favorable to the plaintiffs, and on the facts found by the trial judge in connection with a G. L. c. 93A component of the case.

authorized to transact insurance business in Massachusetts. The application for insurance that Stella made on behalf of Franchi set forth that the job would be fenced and that there would be a mortgage. On September 28, 1988, the special broker issued a binder for "Builders Risk Completed Value Form All Risks" coverage. That binder mentioned neither a mortgagee nor a protective fence condition; it did state the premium for the insurance, $21,000. Meanwhile, Stella had prepared and delivered to HRDT his own binder, issued as of the same date. The Stella binder differed from that prepared by the special broker largely in that it listed the Guaranty First Trust Company as a mortgagee but did not mention the premium.[5] A "special conditions" box on Stella's binder was blank.

In due course, United issued a full-blown policy providing insurance from September 27, 1988, through March 27, 1990, and mailed it to Stella. He retained the policy in his office and did not deliver either the policy or a copy of it to Franchi. The policy, counting cover sheet, inserts and endorsements, contained thirty-five pages. One of those pages was the "Protective Safeguards" endorsement; it called for "fenced site during construction." Another page, titled "Schedule of Limits and Mortgagees," listed Guarantee First Trust Company as mortgagee.

Under the general direction of Eastern Builders, gutting of the three buildings down to their brick bearing walls and supporting timbers got under way. On February 11, 1989, fire damaged the premises so badly that what remained of them had to be demolished. HRDT filed a proof of loss claiming $1,000,000 on account of the real estate plus $565,585.29 on account of demolition, building costs, architectural fees, imputed interest, insurance costs, legal expenses, and real

---

[5]Stella, as the c. 93A aspect of the case brought out, had an incentive not to publish the premium of $21,000 to Franchi, because he billed HRDT $26,040 for the insurance, without troubling to inform his customer that he had added $5,000 to the tab. Another example of Stella's excessively expedient practices in the transaction is that he made an affidavit that, after diligent effort, he had failed to place the coverage with an insurer licensed to do business in Massachusetts and that three such insurers declined to offer the insurance desired. He had made no such effort; rather he made the affidavit on the strength of his certainty, based on his knowledge in the insurance business, that insurers licensed to do business in Massachusetts would decline builders' risk coverage on a rehabilitation project.

estate taxes.[6] United rejected the claim on the grounds that HRDT, the insured, had failed to comply with the fence condition, and that the insured had misrepresented a material fact as to the existence of a mortgagee. Further, United said, the fire had been the consequence of arson, a criminal act that the lack of a protective fence had facilitated.[7]

Trial of the common law questions was before a jury. At the conclusion of the evidence, the trial judge gave the case to the jury on twenty-one special questions. It simplifies presentation to telescope some of the separate answers into one. So, for example, the import of the jury's answers to the first four questions was that United was liable to HRDT on the insurance policy. The actual cash value of HRDT's buildings immediately before the fire the jury assessed at $1,250,976.55 and the cost of removing debris left after the fire they assessed at $119,000. As to Stella, the jury found that he had been negligent and that his negligence had caused Franchi damage. The last question was: "Please state in words and figures what you find to be the amount of the plaintiff's damages, without regard to the negligence or lack of negligence of *anyone*" (emphasis in original).[8] The jury responded with an eye-popping $3,255,976.55, i.e., $1,886,000 in excess of the value of the buildings, as improved by gutting, plus the debris removal cost.

Counsel for Stella immediately remarked on the inconsistency of the jury's answers on damages and suggested to the judge that she call back the jury, which she had just discharged. The judge quite agreed that the verdict was inconsistent but questioned whether she could call back the jury to explain themselves. She could have. On proper motion to resolve an inconsistency, a judge may resubmit questions with additional instructions, or submit supplemental questions. *Holder* v. *Gilbane Bldg. Co.*, 19 Mass. App. Ct. 214,

---

[6] The $565,585.29 amount broke down as follows: $119,000 for demolition of the fire ravaged structures; $127,158.51 for building work prior to the fire; $118,000 for architectural fees; $160,654.09 for imputed interest; $26,040 for insurance; $5,818.04 for legal expenses related to the project; and $8,914.65 for real estate taxes.

[7] Whether arson had caused the destructive fire was much disputed. In any event, arson was not attributed to Franchi and the allegation of arson is not relevant to the appeal.

[8] This demonstrably unhelpful question had been proposed by trial counsel for Stella.

218 (1985). *Adams* v. *United States Steel Corp.*, 24 Mass. App. Ct. 102, 104 (1987). Stella's counsel failed to make such a motion, and Stella cannot on appeal urge that more ought to have been done. *Ibid. Skillen* v. *Kimball*, 643 F.2d 19, 20 (1st Cir. 1981). Later, Stella invoked additional procedural devices aimed at undoing the jury's larger damages figure. We shall describe the details of those steps when considering the judge's action in response to a motion for a new trial by Stella.

1. *The motion for judgment notwithstanding the verdict.* Stella's argument for judgment notwithstanding the verdict is that, as United ultimately was found liable on its insurance policy, HRDT suffered no damage and the negligence attributed by the jury to Stella is an abstraction in that it caused no harm. Franchi was to receive the same benefits from the policy as he would have had Stella performed his duties flawlessly. Indeed, it is elementary that a tort claimant must prove that the injury for which the claimant seeks compensation more likely than not was the consequence of the defendant's negligence; or, in the familiar language of the law, the negligence must have been the proximate cause of the harm. *Fallstrom* v. *Brady Elec. Co.*, 347 Mass. 600, 607 (1964). *Home Ins. Co.* v. *Columbia Ins. Agency, Inc.*, 5 Mass. App. Ct. 621, 622-623 (1977). See *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 192-193 (1982).

Viewing the facts favorably to the plaintiffs, however, see *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 728-729 (1979), the jury could have found that Stella's imprecise handling of the protective fence and mortgagee issues provided United with plausible grounds — until rebutted — to disclaim liability on its policy. There was a chain of causation between Stella's negligence and Franchi becoming obliged to seek legal redress and to run up legal expenses. In the trial of the case, Franchi also pressed the point that he had not been apprised by Stella, and was unpleasantly surprised to learn after the fact, that coverage in the United policy for removal of debris from fire was subject to a deductible formula. Had he known, he might have sought an endorsement to the policy giving fuller coverage. That hypothesis may have been implausible, but the jury could accept it.

The motion for judgment n.o.v. was rightly denied.

2. *Whether acceptance of remittitur barred a new trial.* Fol-

lowing receipt of the puzzling verdict of $3,255,976.55 as the plaintiff's damages, the judge, having expressed her view that the verdict was inconsistent, invited a motion for a remittitur. Stella moved that the judge order a remittitur reducing the judgment against him to $56,451.17.[9] See generally *D'Annolfo v. Stoneham Hous. Authy.*, 375 Mass. 650, 661-662 (1978). Smith & Zobel, Rules Practice § 59.4 (1977). Before the trial judge, on April 30, 1992 (twenty-one days after the jury had returned its verdict), held a hearing on Stella's motion for a remittitur, United settled with Franchi (i.e., all plaintiffs) for $1,725,000. After hearing Stella's remittitur motion, the judge on August 5, 1992, ordered that there be a new trial on damages, which she found to be excessive, unless the plaintiffs should accept $1,969,000 in damages, less the $1,725,000 paid by United; i.e., the damages payable by Stella would be $244,000.[10] On the same day, i.e., August 5, 1992, that she made the remittitur order, the judge also made findings on a G. L. c. 93A count against Stella and awarded damages of $177,881.17,[11] plus $50,000 in legal fees. Franchi accepted the remittitur on August 20, 1992.

Judgment against Stella in the amount of $1,969,000 was entered on December 14, 1992. A second paragraph of the judgment expressed the idea that the c. 93A damages were, indeed, duplicative and (except for $50,000 relating to legal fees incident to the c. 93A action) subsumed in the common

---

[9]The only compensable loss suffered by Franchi that United was not bound to pay was debris removal costs in excess of the $62,548.83 payable under the policy. That excess was $56,451.17. The rules of civil procedure do not include "motion for a remittitur" within their terminology. Rather, a defendant aggrieved by what it considers to be an insupportably high verdict may, pursuant to Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974), move for a new trial. The rule provides that, "A new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit so much thereof as the court adjudges excessive." The "motion for a remittitur" does not appear in the docket of the case, but a copy of the motion, dated April 13, 1992, appears in the record appendix, as does a transcript of the hearing on the motion.

[10]This figure is illustrative because it does not take into account the calculation of interest on the award.

[11]The elements of that figure appear to be the same uninsured debris removal costs and legal fees included in the common law judgment. The judge found that Stella had not acted wilfully and did not multiply the c. 93A damages.

law judgment. The record supports the judge's finding that Stella had not acted wilfully within the meaning of c. 93A, and that the occasion did not call for any multiplication of damages. Now that there was a judgment, Stella made the motion for judgment n.o.v. considered in part 1 of this opinion, and he moved for a new trial. Upon consideration of the latter motion, the judge, in a memorandum of decision dated May 14, 1993, wrote:

> "I find that the remaining award is still greatly dispro-
> portionate to the proven injury. After a further review
> of this case, I conclude that the jury did not exercise a
> reasonable and honest judgment in accordance with con-
> trolling principles of law when they determined the
> amount of damages to be awarded against the defendant
> Stella. This failure has resulted in an award that is
> duplicative, disproportionate, and against the weight of
> the evidence. To avoid the injustice which would result
> if this award were to stand, a new trial is hereby ordered
> on the issue of damages proximately caused by Stella's
> negligence."

An order vacating the remittitur and allowing the motion for a new trial on damages was thereupon entered on the docket.

Someone, no doubt counsel for Franchi, reminded the judge that Franchi had accepted the remittitur. That information stimulated the judge on May 18, 1994 (that is the date of the docket entry), to repent of her allowance of a new trial on damages. She concluded "that the plaintiffs' acceptance of the remittitur precluded my grant of a new trial on any issue." Accordingly, on her own motion, the judge vacated the al-lowance of the motion for a new trial and reinstated against Stella the judgment of $1,969,000, reduced by the $1,725,000 received by the plaintiffs from United. That was the step which laid the basis for Stella's second point on appeal, to which, at long last, we can return.

The trial judge, having decided that it would work an injustice to allow the jury verdict, even as reduced, was not immobilized by acceptance of the remittitur. Although a final judgment had been entered, it was not final in the sense that the ten-day period for moving for a new trial — or moving to alter or amend the judgment — had expired. Until the expira-

tion of that period, a trial judge has continuing authority to grant a new trial if the judge, in the exercise of sound discretion, thinks that a new trial is required to avoid injustice. See *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520-521, cert. denied, 493 U.S. 894 (1989); *Turnpike Motors, Inc.* v. *Newbury Group, Inc.*, 413 Mass. 119, 127 (1992). The power to reconsider decisions made on the road to final judgment is inherent. *Peterson* v. *Hopson*, 306 Mass. 597, 599-602 (1940). *Epstein* v. *Executive Secretary of the Bd. of Selectmen of Sharon*, 22 Mass. App. Ct. 135, 136 (1986). Judges do not lightly revise their decisions. "The censorious are likely to attribute it to instability of mind, or want of calm and considered judgment, or yielding to importunity. . . . Nevertheless it is more important for a judge to do justice according to his oath and his conscience than to avoid adverse criticism. If further reflection convinces him that he has erred in an announced decision, he ought to correct his error while he still has the power." *Sheriff* v. *Gillow*, 320 Mass. 46, 49 (1946).

In the instant case, the area in which the judge thought the jury had stepped beyond the boundary of reason was on the issue of Franchi's damages. It lay within her power to propose a further remittitur figure at the number she thought was within the boundary of reason. If Franchi chose not to accept that figure, there would be a new trial on damages. As it is, the final judgment ultimately entered in this case is the product of the judge's misapprehension about what she might do to correct what she had declared was an injustice. Accordingly, that judgment must be reversed.

When a judge proposes a remittitur it does not constitute an offer, the acceptance of which binds a defendant, who may still, as here, move for a rehearing on its motion for a new trial. Cf. *Omni Flying Club, Inc.* v. *Cessna Aircraft Co.*, 366 Mass. 154, 164 (1974). It would be a reproach to justice if a trial judge, who had become convinced that an injustice was about to be done and who still was in possession of jurisdiction over a case, was reduced to a wringing of hands. The judge who presided at trial has retired from the bench. The question of damages will have to be heard by a new judge.

3. *Damages.* One point in particular has been argued on appeal on the subject of damages. Although that question is not now ripe for appeal because there is going to be a new trial on damages, the point is so likely to recur that we think

it may be helpful to state our views. Stella has argued that Franchi may not recover as an item of damages the legal fees incurred by him in obtaining his rights under the insurance policy issued by United. Legal fees, Stella says, are not recoverable by a winning party except when a statute specially so provides, as in cases under G. L. c. 93A, or cases which warrant invoking the provisions of G. L. c. 231, § 6F.[12] That statement of what is known as the "American Rule" is correct as far as it goes, see *Chartrand* v. *Riley*, 354 Mass. 242, 243-244 (1968), but does not apply when a party's negligence (or other tortious conduct) requires the plaintiff to bring an action against a third party. *M.F. Roach Co.* v. *Provincetown*, 355 Mass. 731, 732 (1969). *Mutual Fire, Marine & Inland Ins. Co.* v. *Costa*, 789 F.2d 83, 88-89 (1st Cir. 1986). Franchi may, therefore, include (as he did at the original trial) as an item of damages legal fees and other legal expenses incurred by him in maintaining the action against United.

It may also be useful to rehearse the permissible elements of damage against Stella, United having been required to meet its obligations under the policy: (a) $56,451 for unreimbursed demolition-debris removal costs; (b) legal expenses incident to the action in the Superior Court against United, but not including legal expenses allocable to the pursuit of Montgomery and Collins (the special insurance broker); (c) $5,040 for Stella's service charge determined by the trial judge to be improper in the c. 93A aspect of the case; and (d) legal expenses attributable solely to the c. 93A action aspect of the case (the trial judge did not provide any rationale for the $50,000 that she awarded).

The judgment is affirmed on the question of the liability of Stella for damages to Franchi by reason of negligence in connection with obtaining the builders' risk insurance policy

---

[12]Before the enactment of G. L. c. 231, § 6F, counsel fees were occasionally recovered in cases when a plaintiff had been obliged to bring legal action in the face of a stonewalling attitude by a party when, manifestly, there was no tenable defense. See, e.g., *Malloy* v. *Carroll*, 287 Mass. 376, 386 (1934), but see the limitations on that approach discussed in *Chartrand* v. *Riley*, 354 Mass. 242, 243-244 (1968).

from United and by reason of unfair and deceptive business practices within the meaning of G. L. c. 93A. The judgment on the amount of damages is vacated, and that component of the case shall stand for a new trial.

*So ordered.*