120          68 Mass. App. Ct. 120 (2007)

Stagg Chevrolet, Inc. v. Board of Water Commissioners of Harwich.

## Stagg Chevrolet, Inc. *vs.* Board of Water Commissioners of Harwich.[1]

No. 06-P-522.

Suffolk. December 8, 2006. - January 30, 2007.

Present: Berry, Dreben, & Kafker, JJ.

*Municipal Corporations*, Water commissioners. *Taxation*, Appellate Tax Board: late entry of appeal, Abatement. *Notice. Water.*

The Appellate Tax Board properly deemed timely the plaintiff's appeal from the decision of the defendant board of water commissioners (board) decision to deny an abatement of a water bill, where the board's notice informing the plaintiff of its decision failed to include information, required by G. L. c. 59, § 63, regarding the plaintiff's appellate rights; further, in curing the failure of the defective notice, the Appellate Tax Board correctly looked to the most relevant statutory standards to establish a reasonable time for appeal, which in this case was the time frame established in G. L. c. 59, § 64, for applications "deemed to be denied." [123-126]

Appeal from a decision of the Appellate Tax Board.

*Brian W. Riley* for the defendant.

*Pamela B. Marsh* for the plaintiff.

Kafker, J. Stagg Chevrolet, Inc. (Stagg), sought an abatement of a water bill for its purported usage of over four million gallons of town water during a four-month period, an amount Stagg claimed was over forty-seven times its customary usage. The board of water commissioners denied the abatement.

---

[1]Using standard forms supplied by the Appellate Tax Board (ATB), the aggrieved party, Stagg Chevrolet, Inc., mistakenly named the board of assessors of Harwich as the respondent rather than the board of water commissioners. The water commissioners, however, responded and defended below. The ATB found that the water commissioners were not prejudiced by the misidentification, and treated the appeal as if properly brought against them. As the water commissioners neither objected below nor in their brief on appeal, we treat the misnomer issue as waived under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

68 Mass. App. Ct. 120 (2007)                                    121

Stagg Chevrolet, Inc. *v.* Board of Water Commissioners of Harwich.

Although the water commissioners were required to inform Stagg of how their decision could be appealed, see G. L. c. 59, § 63,[2] their notice to Stagg failed to include this vital information. The water commissioners' decision was therefore deemed a nullity by the Appellate Tax Board (ATB),[3] which extended the time for the filing of Stagg's appeal and awarded the abatement that is the subject of the present appeal. Had the notice been deemed effective, Stagg would have missed the deadline for filing its appeal with the ATB "within three months after the date of the [water commissioners'] decision." G. L. c. 59, § 65, as amended through St. 1989, c. 718, § 7.

At issue is the legal effect of a notice that fails to include statutorily required information regarding the appellate process. We conclude that the Legislature mandated that this important information about how to appeal be included in the notice, and therefore the notice of the water commissioners' decision was ineffective for the purpose of determining when to commence the running of the three-month appeal period. We therefore affirm the ATB decision awarding the abatement.

*Background.* The plaintiff aggrieved party, Stagg, is a dealership for new and used cars located in the town of Harwich. Stagg first began using town water service in 1985, and its water usage was consistent until 1992, when it received a bill for usage of approximately 4.8 million gallons of water over a six-month period. Stagg's water meter was replaced, it was granted a substantial abatement, and its water usage returned to normal levels.

In June, 2002, Stagg received the water bill presently at issue in the amount of $9,083.45, showing over four million gallons of water used for a four-month period.[4] On July 15, 2002, Stagg applied for an abatement. The town had the meter tested, and the testing company reported that the meter was *underreporting* water use. By letter to Stagg dated August 21, 2002, the town

[2]General Laws c. 40, § 42E, provides that "the provisions of chapter fifty-nine relative to the abatement of taxes by assessors shall apply, so far as applicable, to abatements [of water charges] hereunder."

[3]Pursuant to G. L. c. 40, § 42E, the ATB is the agency responsible for water charge abatement appeals.

[4]Again the meter was replaced and Stagg's water usage returned to its prior levels.

water superintendent gave notice to Stagg that "[o]n August 20, 2002, at a regularly scheduled meeting, the Board of Water Commissioners discussed the situation and unanimously voted to deny your application for an abatement due to the test results." This letter did not state that "appeal from such decision . . . may be taken as provided in sections sixty-four to sixty-five B, inclusive," as was required by G. L. c. 59, § 63.

Stagg requested and was given a second hearing by the water commissioners.[5] By letter to Stagg dated September 24, 2002, the town water superintendent explained that the request was considered and again rejected due to the testing of the meter. This letter also failed to include any information regarding appellate rights.

On December 19, 2002, more than three months after the August 20, 2002, decision, Stagg filed a statement under the informal procedure[6] commencing proceedings before the ATB and claiming that its average water bill ranged from $109 to $156. This was later amended to a petition under the formal procedure on March 21, 2003, which the ATB found to have related back to the original filing.[7] The water commissioners moved to dismiss Stagg's appeal as untimely.

The ATB denied the motion to dismiss and determined that the water commissioners' notices of August 21 and September 24 were ineffective based on noncompliance with that portion of G. L. c. 59, § 63, requiring that the notice shall state "that appeal from such decision . . . may be taken as provided in" §§ 64 and 65.[8] As direct authority therefor, the ATB relied on Valley Realty Co. vs. Assessors of Springfield, ATB No. 22244,

---

[5]In part, Stagg noted that it did not have an irrigation system, and that it no longer washed customer cars as a courtesy, but instead only washed new cars.

[6]See G. L. c. 58A, § 7A ("the [ATB] shall establish by rule an alternative procedure [to G. L. c. 58A, § 7], hereinafter referred to as the informal procedure, for the determination of petitions for abatement of any tax"). See Cohen v. Assessors of Boston, 344 Mass. 268, 269-270 (1962).

[7]In its initial informal petition, Stagg asserted that it made its application for abatement on September 26, 2002, and that it was denied on that date. In its formal petition, Stagg alleged that it made its application for abatement on July 15, 2002, and that it was denied on September 24, 2002.

[8]Section 63 also incorporates a reference to G. L. c. 59, §§ 65A and 65B, but neither is applicable here.

68 Mass. App. Ct. 120 (2007)                                    123

Stagg Chevrolet, Inc. *v.* Board of Water Commissioners of Harwich.

at 45, 48 (April 30, 1945).[9] As the notices were inoperative, the filing on December 19, 2002, was considered "timely as it was within the three-month statutory period for appealing the deemed denial of its application for abatement."[10] The ATB then reached the merits and found for Stagg, reducing the water charge to $174.15, consistent with the average of Stagg's customary usage, and ordering an abatement of $8,909.30.

On appeal, the water commissioners challenge only the ATB's determination that Stagg's petition to the ATB was timely under the statutory procedure for seeking abatements set forth in G. L. c. 59, §§ 63, 64, and 65 (made applicable here by G. L. c. 40, § 42E).[11]

*Discussion.* General Laws c. 40, §§ 42A-42E, concern the collection of water charges that, as here, remain unpaid. "Section 42E lays out a procedure of abatement and appeals analogous to that available for tax relief, but it relates . . . to a charge under §§ 42A through 42F . . . ." *Epstein* v. *Executive Secretary of the Bd. of Selectmen of Sharon*, 22 Mass. App. Ct. 135, 137 (1986).

---

[9]In Valley Realty, the ATB interpreted the 1943 amendment to G. L. c. 59, § 63, see St. 1943, c. 79, which added the requirement that the notice of the assessors' decision include direction on how appeal from their decision may be taken. The ATB denied a motion to dismiss an appeal as untimely because "[t]he notice of the assessors' decision on the application [for abatement of real estate taxes] did not state therein that an appeal from such decision may be taken as provided in the statutes." Determining that "such an omission rendered the notice invalid because it failed to comply with the statutory requirement[,]" the ATB employed the same remedy as in the instant matter, treating the application for abatement as "deemed to be denied."

[10]When a board of assessors (or, as here, the board of water commissioners) fails to act upon an abatement application "prior to the expiration of three months from the date of filing of such application it shall then be deemed to be denied." G. L. c. 59, § 64, as amended by St. 1945, c. 621, § 5. For an appeal of a "deemed denied" application to be timely it must then be filed "within three months after the time when the application for abatement is deemed to be denied as provided in section sixty-four." G. L. c. 59, § 65. Here, the ATB found that the application, which had been filed on July 15, 2002, was deemed denied on October 15, 2002, and that the appeal under the formal procedure related back to the appeal under the informal procedure, which had been filed on December 19, 2002. There is no dispute that the appeal was timely filed if it was an appeal of a deemed denied application.

[11]The water commissioners do not challenge the ATB's findings and conclusions on the merits.

General Laws c. 40, § 42E, as amended through St. 1939, c. 451, § 7, provides, in pertinent part:

"An owner of real estate aggrieved by a charge imposed thereon under sections forty-two A to forty-two F, inclusive . . . may apply for an abatement thereof by filing a petition with the board or officer having control of the water department . . . If such petition is denied in whole or in part, the petitioner may appeal to the appellate tax board upon the same terms and conditions as a person aggrieved by the refusal of the assessors of a city or town to abate a tax."

General Laws c. 59, § 63, provides, in full:

"Assessors shall, within ten days after their decision on an application for an abatement, send written notice thereof to the applicant. If the assessors fail to take action on such application for a period of three months following the filing thereof, they shall, within ten days after such period, send the applicant written notice of such inaction. Said notice shall indicate the date of the decision or the date the application is deemed denied as provided in section sixty-four, and shall further state that appeal from such decision or inaction may be taken as provided in sections sixty-four to sixty-five B inclusive."

It is undisputed that the August 21 notice did not comply with the statute. The issue then becomes whether the statutory language is mandatory or merely directory in terms. As explained by Chief Justice Lemuel Shaw in a case involving the failure of assessors to keep their lists of valuations and assessments in the form prescribed by statute, directory provisions are those "designed for the information of assessors and officers, and intended to promote method, system and uniformity in the modes of proceeding, the compliance or non-compliance with which, does in no respect affect the rights of tax-paying citizens." *Torrey* v. *Millbury*, 21 Pick. 64, 67 (1838). *Cheney* v. *Coughlin*, 201 Mass. 204, 212 (1909).

We conclude that the notice of appellate rights required by G. L. c. 59, § 63, is not merely directory. See, e.g., *Mann* v. *As-*

*sessors of Wareham*, 387 Mass. 35, 39 (1982), quoting from *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.*, 354 Mass. 85, 89 (1968) ("[a] tax statute must be strictly construed and 'all doubts are to be resolved in favor of the taxpayer' "). The August 21 notice did not, as was required by statute, inform the abatement applicant that the decision was appealable, that the ATB was the agency that would be responsible for deciding the appeal of the disputed water bill, and that the appeal needed to be filed within three months of the water commissioners' decision. All this information is important and beneficial to any applicant. It provides a roadmap to guide the appeal, directing the applicant to the ATB, a not-so-obvious place to challenge water bills. It also alerts the applicant to the potentially fatal hazard presented by the three-month window to file. In an increasingly complex and costly legal system, the notice provision serves the valuable purpose of pointing disappointed applicants in the right direction at the commencement of the appellate process.

The failure to comply with the notice requirements in § 63 affects the filing deadlines established in G. L. c. 59, § 65, which provides that a person may

> "appeal to the appellate tax board by filing a petition with such board within three months after the date of the assessors' decision on an application for abatement *as provided in section sixty-three*, or within three months after the time when the application for abatement is *deemed to be denied as provided in section sixty-four*" (emphasis supplied).

Having concluded that the decisions were not noticed as provided in § 63, the ATB nullified the decisions and applied § 65's alternative "deemed to be denied as provided in section sixty-four" time frame for the filing of appeals. Section 64 provides, in pertinent part:

> "Whenever a board of assessors . . . fails to act upon said application . . . prior to the expiration of three months from the date of filing of such application it shall then be deemed to be denied . . . ."

In the instant case, however, the water commissioners did not

actually fail to act; rather, they issued a defective notice. Although the ATB equated the two by holding that the defective notice nullified the decision itself, the ATB did not fully address *SCA Disposal Servs. of New England, Inc.* v. *State Tax Commn.*, 375 Mass. 338 (1978), which considered the denial of an application for a sales tax abatement. In *SCA*, the court observed that where the State Tax Commission had taken action and given notice, but notice was never received, the commission had not "fail[ed] to act" so as to trigger the "deemed to be denied" provision of G. L. c. 58A, § 6. *Id.* at 340. In that context, where no notice, rather than defective notice, was received within the statutory period, the court corrected the problem by allowing a reasonable time for appeal based upon the statutory period, "measured from the date of receipt." *Id.* at 342.

Pursuant to *SCA*, we conclude that in the instant matter, the failure to notify the applicant of its appeal rights as required by § 63 may be cured by allowing a reasonable time for appeal based on the most relevant statutory standards. Here, where notice has been given, but lacks critical information for the applicant as to its appellate rights, the "deemed to be denied" time frame provides a reasonable time period with dates certain easily ascertained by both parties. It is drawn directly from the statute. It also provides some redress for the failure to inform the applicant of its appellate rights; otherwise, the requirement that notices conform to the legislative directive would be rendered meaningless. For these reasons, we conclude that the ATB properly deemed the appeal timely pursuant to G. L. c. 59, §§ 63, 64, and 65.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*