Swan, J.
John Forster (“Forster”) values his privacy, so much so that for many years he has denied municipal employees access to his properties in the town of Belmont (“town”) to read his water meters. Consequently, the town issued him water and sewer bills based on estimates of usage. The bills went unpaid, according to the town, and were committed to the town’s tax collector for collection. Alleging overbilling and unlawful assessment of interest and penalties, Forster sued the town for breach of contract, unjust enrichment, and violations of the Consumer Protection Act, G.Lc. 93A The town answered and, after discovery, moved for summary judgment on the grounds that Forster had failed to exhaust his administrative remedies under G.L.c. 40, §§42A-42E, that the town was not liable under G.L.c. 93A, and that the G.L.c. 93A claim was not brought within the applicable statute of limitations. Forster moved to strike a portion of the town’s supporting affidavit and cross-moved for partial summary judgment on his contract and unjust enrichment counts on the ground that, as to those counts, there were no material issues of fact in dispute. The trial court allowed the town’s motion and denied Forster’s motions. Forster has appealed all the courts rulings.
Before summarizing the facts, we must first address Forster’s motion to strike to determine what facts were properly before the trial court. In support of its motion for summary judgment, the town submitted, among other documents, an affidavit of its tax collector, which Forster moved to strike, the court’s denial of which he claims was error. Forster argues first that since the collector had held office only since April, 2005, he was incompetent to testify to Forster’s outstanding water and sewer charges committed to the collector’s office prior to that time as not based on his personal knowledge. See Mass. R. Civ. R, Rule 56(e). But in a second affidavit, which was not subject to the motion to strike, the collector averred that his “duties include maintaining true and accurate copies of all tax records and tax documents.” His competence therefore extends to all records in his office, whether generated by himself or his predecessors, inasmuch as those records are the very basis for the collector’s statutory power to “collect... all accounts” due the town. G.Lc. 41, §38A. His affidavit is that of a keeper of official records. See Lodge v. District Attorney for the Suffolk Dist., 21 Mass. App. Ct. 277, 278-279 (1985).
*276 The other point of Forster’s motion to strike is that the collector’s affidavit contradicts the water superintendent’s deposition testimony. The superintendent testified on behalf of the town pursuant to Mass. R. Civ. R, Rule 30(b) (6), which provides for depositions of organizations:
A party may in his notice and in a subpoena name as the deponent a public or a private corporation or partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify.... The persons so designated shall testify as to matters known or reasonably available to the organization.
The effect of rule 30(b) (6) is that the witness’s answers on matters enumerated in the notice of deposition will bind the organizational deponent See Gleason v. Source Perrier, S.A., 28 Mass. App. Ct. 561, 569 (1990). In his notice of deposition to the town, Forster indicated that the rule 30(b) (6) designee would be examined primarily on eight enumerated items concerning water usage for Forster’s properties, and policies and procedures relating to estimating water bills; two such items were the “handling and treatment of any water/sewer usage accounts for John Forster” and the “decision-making for the handling of water/sewer accounts for John Forster.” Given this extensive list of water and sewer issues generally, and Forster’s water usage more specifically, the town designated its water superintendent to testify. When asked what the account balances owed by Forster were, he answered, “I don’t know.” Forster claims that the tax collector’s recitation of charges and credits for outstanding water and sewer charges committed to his office contradicted the superintendent’s rule 30(b)(6) testimony. It does not Forster “failed to state with particularity in [his] original request under rule 30(b) (6) [his] desire to depose someone with particularized knowledge concerning” a specific matter. Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep’t of Mental Retardation, 424 Mass. 430, 461 n.30 (1997). That specific matter was Forster’s actual account balances. Instead, the notice referred only generally to the “handling and treatment” of Forster’s accounts and decision-making for the accounts — matters relating to policy and operations. Had Forster called for a deponent to testify to account balances, i.e., specific numbers, the town under the rule would have been on notice to produce the tax collector, or someone from the collector’s office, as an additional deponent Forster did not, and thus the town did not Further, while “case law establishes that a party, purely in the hopes of defeating summary judgment, may not submit at the eleventh hour an affidavit that contradicts the party’s earlier statements and discovery responses,” Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen., 443 Mass. 837, 864 (2005), it “contains no blanket prohibition on affidavits that merely elaborate on previously sworn statements.” Id. at 865. The tax collector’s affidavit did no more than that The court’s order denying the motion to strike and allowing consideration of the tax collector’s affidavit was not error, and we now consider it as well in marshaling the facts.
Viewing the evidence in the light most favorable to Forster, Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), citing Mass. R. Civ. R, Rule 56(c), we accept the following facts. By special act of the Legislature, a water department (“depart *277 ment”) was established for the town in the nineteenth century for providing drinking water to its residents. St 1885, c. 296. The town accepted the provisions of G.L.c. 40, §§42A-42F in 1927. The department does not make a profit from providing water, and uses excess revenues to reduce future water and sewer charges and improve its infrastructure. Until the early 1990s, the town allowed property owners to self-report their water usage by reading their meters and writing the current cubic footage on a card and sending it to the department Because of significant errors arising from the self-reporting system, the town, in 1992 or 1993, adopted a policy of obtaining an actual meter reading by its employees four times a year. If a meter could not be physically read, the department would estimate the usage for that quarter. If two or three years of estimates elapsed, the department would notify by mail or telephone the property owner to arrange for an actual reading. To obtain accuracy, it was the department’s policy, in the words of its superintendent, “that the actual read had to be made based on our own meter reader’s read,” and when property owners did “not respond to our requests [for a meter reading]... the billing people would just take and boost the estimate until [the owners] would call,... typically doubling it until we got a response.”
Forster owns two properties in the town, at 53 Crestview Road and 278 Concord Avenue. He contends, “I strongly believe in protecting both my privacy and my personal property,” and thus would not allow department workers on his land to read the meters. Forster was billed on the basis of estimates, apparently doubled and redoubled in accordance with the town’s practice, and he failed to make payments. Outstanding water bills were committed to the town’s tax collector in September, 1996, and Forster made payments toward them the following January, 1998. In July, 1998, additional unpaid department charges were committed to the tax collector, and some payments were made in 2000. On March 23, 2001, the tax collector’s office gave Forster a breakdown of the outstanding water and sewer charges and accrued interest and other costs on each parcel on an unsigned printed form entitled “Partial Payment Receipt.” Charges continued to accrue even after the department commenced reading meters by remote radio transmitter, obviating the need for human readers. According to the town’s records, as of April, 2007, the total amount due the town was $57,083.94 for water and sewer charges and accrued interest and costs. Forster never filed for an abatement. In his own affidavit in support of his motion for partial summary judgment, Forster averred that after his payments toward his water bills, in January, 1998 and February, 2000 and other credits, the town owed him $20,410.99. (He has since reduced the claim to $3,833.62.) On May 1, 2000, Forster presented the town with a G.L.c. 93A demand letter, accusing the town of “fraudulent” and “highly inflated” water bills based on “uneducated guesses” and “bogus readings” in “retaliation against me because I stand up for my rights, including my constitutionally guaranteed right to privacy.”
Without further comment, we observe only that the controversy has been exacerbated both by Forster’s insistence that no meter readers or other governmental officials[1] may set foot on his property, and the town’s practice of doubling and quadrupling the usage estimates to get his attention. The town is correct, however, that the method of challenging the amount of unpaid water bills is the abatement procedure set forth in G.L.C. 40, §§42A-42E, which, as noted above, was accepted by the town in *278 1927. Simply stated, rates and charges not paid on or before their due date become a lien upon the real estate, §42A, to continue until dissolved by payment or committed as a tax, §42B,[2] or certified to the assessors and then committed to the tax collector as a tax. §42C.[3] A property owner aggrieved by the imposition of the tax may, within three months after the bill is sent, apply to the department for an abatement in accordance with G.L.c. 59, §59, and if his petition is denied in whole or in part, he may appeal to the Appellate Tax Board. G.L.c. 40, §42E. This statutory scheme establishes the administrative remedy for claims of excessive assessment. Boston v. Second Realty Corp., 9 Mass. App. Ct. 282, 284 (1980). See Sears, Roebuck & Co. v. Somerville, 363 Mass. 756, 757-758 (1973). Recourse to court action may be had only after these administrative remedies have been exhausted. New England Legal Found. v. Boston, 423 Mass. 602, 607 (1996). “If the taxpayer’s grievance is that the tax is excessive, relief through application for abatement and petition to the Appellate Tax Board has been described as not just the desired remedy but the only one” (emphasis added). Tax Collector of Braintree v. J.G. Grant & Sons, Inc., 26 Mass. App. Ct. 731, 734 (1989).
There are narrow exceptions: “Should the administrative remedy of abatement be seriously inadequate, or the case involve novel questions, repetitive problems, or the public interest, ‘resort to the court has been grudgingly countenanced.’” Moore v. Brockton, 2003 Mass. App. Div. 70, 71, quoting Tax Collector of Braintree, supra. Forster has shown no such factors. That he has made past due payments in lump sums, which he claims were in excess of what he actually owes, does not make the abatement process inadequate. If he overpaid, he would be entitled to a credit Indeed, all that is novel about this case is of Forster’s own making, namely, barring meter readers from his property. Finally, the “fact that the time period for obtaining administrative relief has expired is not a sufficient reason to permit resort to the court.” Id.
*279 Forster relies on Epstein v. Executive Secretary of the Bd. of Selectmen of Sharon, 22 Mass. App. Ct. 135 (1986), for its holding that he “may vindicate [his] right in the District Court” Id. at 137. In Epstein, however, the property owners “timely paid all their water bills,” id. at 135, and then followed their right under G.L.c. 40, §391 to have their water meter examined and tested, after which they claimed that the meter was defective and their water bill excessive. Id. at 135-136. The Appeals Court ruled that by following this route, they could seek reimbursement by way of damages in the District Court, adding that the Appellate Tax Board had “no self-evident skill to treat of a malfunctioning water meter. That is the sort of idiosyncratic question of fact which a court is equipped to handle.” Id. at 137-138. But the Court also held that the abatement administrative remedy “deal[s] exclusively with the collection of water charges if they remain unpaid1“ (emphasis added). Id. at 137. Accord Moore, supra. Here, the water charges on Forster’s properties were not timely paid; they were committed to the tax coEector pursuant to G.L.c. 40, §42B, and he was obtiged to resort to the administrative remedy.
Had Forster wished to seek resort to the court, he needed first to pay the water charges, have his meter tested pursuant to G.L.c. 40, § 391, and commence an action for damages in the manner foEowed by the plaintiffs in Epstein and Moore. He chose not to foEow this route. Accordingly, the court below correctly granted summary judgment dismissing the action for faüure to exhaust administrative remedies.[4]
As all counts in the complaint were subject to dismissal on this ground, we need *280 not analyze Forster’s G.L.c. 93A claim, other than to note that the town, providing water to its residents as it does in accordance with a special act of the Legislature, is not a person engaged in trade or commerce. Morton v. Hanover, 43 Mass. App. Ct. 197, 205-206 (1997). See also Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 86 (2004); Boston Hous. Auth. v. Howard, 427 Mass. 537, 539 (1998) (no G.L.c. 93A liability imposed on parties motivated by legislative mandate). Also, since Forster’s c. 93A claim arose prior to his May, 2000 demand letter, the action, commenced in October, 2004, was time barred by the four-year statute of limitations. G.L.c. 93A, §9. Fine v. Huygens, DiMella, Shaffer & Assocs., 57 Mass. App. Ct. 397, 404 (2003). For these additional reasons, Forster’s c. 93A count was properly dismissed.
In light of the foregoing, the court’s rulings compelled denial of Forster’s motion for partial summary judgment, which, given the material facts in dispute over what, if anything, was owed to whom, would in any event have met with no success.
In sum, we affirm the court’s denial of Forster’s motion to strike the tax collector’s affidavit, allowance of the town’s motion for summary judgment, and denial of Forster’s motion for partial summary judgment.
Appeal dismissed.
So ordered.

 This includes mail carriers, according to his counsel. Forster has a postal box in town.

 Under §42B, overdue rates and charges may be collected, among other ways, by shutting off the water, an option not here chosen by the town.

 For the first time on appeal, Forster claims that the water and sewer charges were not committed as a tax and thus the abatement process could never be commenced because the water charges were not “certified” by the department to the assessors, as set forth in G.L.c. 40, §42C. In support of this argument, he references the water superintendent’s deposition testimony answering “No” to the question, “Has anyone from the tax collector’s office sought a formal certification under the pains and penalties of peijury of the amounts owed by Mr. Forster?” No such procedure of a seeking by the collector of a sworn certification is required by §42C. Once an unpaid rate or charge becomes a lien upon the real estate under G.Lc. 40, §40A, the lien terminates on October first of its third succeeding year unless it has been “added to or committed as a tax.” G.L.c. 40, §40B. The next section speaks to the situation where the rate or charge has not been “committed as a tax”: in that case, the department “shall certify such rate or charge to the assessors,” who in turn shall “add such rate or charge to the tax on the property” and “commit it... to the collector of taxes.” G.L.c. 40, §40C. The specific statutory prerequisites aside, what is controlling here is that the collector, in his first affidavit, declared, without unnecessary elaboration, that Forster’s charges were “committed to the Tax Collector” — presumably with regularity. Nothing in the deposition of the water superintendent contradicts that statement. Once committed as a tax, the water charges became subject to the abatement procedure.

 Forster aEeges that the town is precluded from pursuing the defense of his failure to exhaust administrative remedies because the water superintendent, the rule 30(b)(6) deponent, was unable to articulate at his deposition how Forster had so faEed. The notice of deposition requested that the witness was to testify to the “substance of any Answer to Interrogatory,” but the record appendix does not include any answers to interrogatories, so we cannot discern what the witness was to be asked. Further, what Forster relies on is the foEowing unhelpful exchange in the deposition:
Q: Flipping to page 3 of the [town’s] answer, looking at the fourth defense, you will agree with me that it states the “Plaintiff failed to exhaust remedies,” correct?
A: (Looking at document) I can’t answer on behalf of another person. I don’t know if he failed or not. I mean, we changed our meters, the data was generated and given to the town counsel at the time, and credited the account, and that is what I did.
Q: Okay. Are those aE of the facts that you have as the Town’s 30(b) (6) designee that support that defense?
A: It’s aE contained in all of the billing histories, yes.
The examiner was less than artful, and the answer was not responsive, probably because the deponent did not comprehend what he was being asked, all of which leads to the question whether a lay witness can even be deposed on conclusions of law as opposed to matters of fact. A glaring example of this problem occurred moments before when the town’s rule 30(b) (6) deponent, who, we remember, was the water superintendent, when asked what were the facts supporting the town’s defense of laches, understandably stated, “I have no concept of what the meaning is of what you are talking about.” Forster’s argument has no merit.