Jones *v.* Boykan.

LUCY JONES & others[1] *vs.* RONALD BOYKAN & others.[2]

Hampden. October 2, 2012. - February 6, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Judgment,* Default, Relief from judgment, Amendment. *Damages,* Civil rights, Attorney's fees. *Practice, Civil,* Default, Entry of judgment, Vacation of judgment, Damages, Affirmative defense, Waiver, Attorney's fees, Costs. *Civil Rights,* Damages, Attorney's fees. *Jurisdiction,* Superior Court.

In a civil action, the judge hearing the defendants' second motion pursuant to Mass. R. Civ. P. 60 (b) properly ordered a rehearing on the assessment of damages, where, at the time the judge ruled on this second motion, no appeal had been docketed and the case remained in the Superior Court, and thus, the judge retained the discretion to try to correct any error he believed he had made in connection with a previous ruling or decision. [291-296] SPINA, J., dissenting, with whom Ireland, C.J., joined.

This court declined to award attorney's fees for proceedings on appeal to the plaintiffs in a civil action, who claimed entitlement to such fees under 42 U.S.C. § 1988 as prevailing parties under 42 U.S.C. § 1983, where the plaintiffs requested "costs" but did not separately request attorney's fees in their appellate brief filed in the Appeals Court; however, this court noted that, should the plaintiffs emerge as prevailing parties after entry of default judgment on remand, they would be entitled to seek attorney's fees in the Superior Court for proceedings before that court. [296-298]

A Superior Court judge acted prematurely in ordering the entry of an amended default judgment to correct the omission of one plaintiff's name in the original default judgment, where, in the circumstances of the case, the Superior Court did not have jurisdiction at the time to entertain a motion to amend the earlier default judgment, even to correct a clerical mistake. [298-299]

CIVIL ACTION commenced in the Superior Court Department on June 12, 2003.

A motion for judgment of default, filed on June 7, 2004, was heard by *Peter A. Velis,* J., a hearing on an assessment of damages was held before him, and motions to vacate judgment were also heard by him.

[1]Sierra Jones, Nicole Jones, and William Owens.

[2]City of Springfield and the Springfield police department.

After review by the Appeals Court, a motion for attorney's fees and costs was considered in the Appeals Court by *Barbara A. Lenk* and *Frederick L. Brown*, JJ. The Supreme Judicial Court granted leave to obtain further appellate review.

A motion to amend judgment, filed on January 17, 2012, was heard by *Peter A. Velis*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Garry Teixeira* for Lucy Jones & others.

*Patricia Bobba Donovan* (*Lisa C. deSousa*, Associate City Solicitor, with her) for Ronald Boykan & others.

BOTSFORD, J. This case arises out of a violent altercation in 1999 involving the plaintiffs, Lucy Jones, Nicole Jones, William Owens, and Sierra Jones, and the defendant, Officer Ronald Boykan of the Springfield police department (department). More than thirteen years later, with a procedural history that features missteps by many, the case arrives before us on limited further appellate review. See *Jones* v. *Boykan*, 79 Mass. App. Ct. 464 (2011) (*Jones II*). In *Jones II*, the Appeals Court ordered the reinstatement of a 2004 default judgment against Boykan and the defendant city of Springfield (city). *Id.* at 471. We also have before us on direct appellate review an order of the Superior Court dated March 30, 2012, that amended the 2004 default judgment to correct a clerical error and that reinstated it. For the reasons we explain hereafter, we conclude that the case must be remanded to the Superior Court for another hearing to assess damages.

1. *Background.* The Appeals Court's decision describes the factual background underlying this case. See *Jones II*, 79 Mass. App. Ct. at 465. In summary, the plaintiffs filed a complaint in the Superior Court in June, 2003, alleging that in June of 1999, Boykan, acting in his capacity as a Springfield police officer, entered the plaintiffs' convenience store, forced his way into a restricted area of the store, arrested two of the plaintiffs, Nicole[3] and Owens, and beat all of the plaintiffs. Nicole and Owens were charged with disorderly conduct and assault and battery on a police officer, but ultimately were acquitted of these crimes

---

[3]We use first names because multiple family members have the same surname.

by a jury. In the meantime, the plaintiffs lost their business — the store — and suffered physical and emotional injuries.

The plaintiffs, representing themselves, filed their complaint in the Superior Court on June 12, 2003. We summarize below the procedural history that followed the filing of the complaint.

The complaint named Boykan and the department as defendants and contained claims for assault and battery, violation of 42 U.S.C. § 1982 (1994), and violation of G. L. c. 93A.

By September 23, 2003, the plaintiffs had served the defendants by hand delivery and certified mail. Although Boykan was served at his place of business, the police station, rather than at his last known residence as directed by Mass. R. Civ. P. 4 (d) (1), as amended, 370 Mass. 918 (1976), he concedes that he had actual notice of the complaint in 2003.

The defendants did not answer the complaint. Instead, they served on the plaintiffs a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), to which the plaintiffs served an opposition. The defendants, however, never filed the motion or the plaintiffs' opposition with the court.

The docket reflects that between September, 2003, and July, 2004, the defendants received notice of filings and court events in the action on at least nine occasions. The defendants, however, failed to respond to the complaint, provide discovery, or appear for any motion hearings, the final pretrial conference, the hearing on the plaintiffs' request for default, or the subsequent hearing to assess damages.

A default against the defendants was entered in June, 2004. After a hearing to assess damages held on July 21, at which the plaintiffs were represented by counsel for the first time and where the defendants again failed to appear despite notice, the judge ordered a default judgment "without prejudice" to be entered against the defendants pursuant to Mass. R. Civ. P. 55 (b) (2), as amended, 423 Mass. 1401 (1996). The default judgment awarded the plaintiffs damages in the amount of $1 million, the figure listed on the plaintiffs' civil action cover sheet. It appears from the docket entries that the court sent notice to the defendants on July 26 that judgment in the amount of $1 million was to enter; a default judgment in that amount ultimately was entered on the docket on August 9, 2004.

On August 4, 2004, before the actual entry of judgment, the defendants filed an emergency motion under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), to vacate judgment and to move for reconsideration. In that motion, the defendants argued that their inaction constituted excusable neglect under rule 60 (b) (1); the judgment was void under rule 60 (b) (4), because the complaint was served untimely and improperly; and the judgment should be vacated under rule 60 (b) (6), to accomplish justice due to the defendants' valid statute of limitations and factual defenses.

The motion judge denied the defendants' motion in a memorandum of decision and order dated October 22, 2004, concluding that the grounds cited by the defendants for relief under rule 60 (b) lacked merit, and that "[j]ustice would not be served by relieving the defendants from their conscious, extended, and unjustified inattention to this case." The judge explained that pursuant to the misnomer rule, the fact that the complaint named the Springfield police department as a defendant instead of the city was not fatal to the plaintiffs' claims against the city, because the city was the intended defendant and had been served, and had waived the defense of misnomer by not raising it in a responsive pleading. The judge also concluded that the plaintiffs actually had intended to state a claim under 42 U.S.C. § 1983 (1994 & Supp. II), and not § 1982, and pursuant to Mass. R. Civ. P. 8 (f), 365 Mass. 749 (1974) ("[a]ll pleadings shall be so construed as to do substantial justice"), ruled that the complaint shall be read to reference § 1983.

On November 2, 2004, the defendants filed a second motion pursuant to rule 60 (b), combining it with an emergency motion for reconsideration of the October 22, 2004, order. In the second motion, the defendants repeated their earlier, rejected claims and added some new ones. Specifically, they argued that their conduct constituted excusable neglect under rule 60 (b) (1); relief was warranted pursuant to rule 60 (b) (3), because the judgment was based on the plaintiffs' fraud; improper service on Boykan and misnomer of the city rendered the judgment void against these defendants under rule 60 (b) (4); and the motion judge erred in failing to hear evidence or make requisite factual findings in arriving at the $1 million damages assessment.

In a memorandum of decision and order dated June 30, 2005,

the motion judge declined to adopt the defendants' claims under rule 60 (b) (1) and (3). However, the judge allowed the defendants' motion to vacate the entire judgment of default against Boykan pursuant to rule 60 (b) (4), concluding that Boykan had not waived proper service of process. The judge also vacated the assessment of damages against the city, concluding that he had erroneously entered judgment in the amount sought by the plaintiffs "based entirely on the request and representations of the plaintiffs' counsel," and therefore the award was not based on competent evidence. The motion judge ordered that a new hearing be held to assess damages against the city.

The damages hearing against the city was scheduled for March 23, 2006. There were hearings held in the case on March 23 and March 30, but the motion judge did not assess damages on either date. Instead, on both hearing dates the defendants argued extensively to the judge that the plaintiffs would not be entitled to recover damages against the city in connection with the default judgment because the plaintiffs' complaint failed to state any claim for which relief could be granted, citing *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming,* 376 Mass. 826 (1978) (*Productora*). After much discussion, the motion judge offered the plaintiffs the opportunity to file an amended complaint in light of the defendants' arguments.

The plaintiffs filed an amended complaint on April 25, 2006, again naming Boykan and the department as defendants and setting forth the same claims presented in their original complaint in addition to a claim for false arrest. Their second amended complaint filed on June 26 formally added the city as a defendant.

The defendants filed a motion to dismiss the plaintiffs' amended complaint. On July 27, 2006, a different Superior Court judge dismissed all the plaintiffs' claims, except the tort claims of Lucy and Sierra against Boykan and the § 1983 claim of Lucy against Boykan, for failure to comply with the applicable statutes of limitations and to state a claim on which relief can be granted. On February 16, 2007, a third judge in the Superior Court granted the defendants' motion for summary judgment on Lucy's and Sierra's remaining claims against Boykan. An amended final judgment dismissing the amended complaint entered on April 12, 2007. The plaintiffs filed a notice of appeal in the Superior Court

on May 9, 2007, but a judge in that court dismissed the notice of appeal as untimely. The Appeals Court reversed the dismissal of the notice of appeal, *Jones* v. *Boykan*, 74 Mass. App. Ct. 213 (2009) (*Jones I*), S.C., *Jones II*, *supra*, and the appeal proceeded thereafter in the Appeals Court.

On May 11, 2011, the Appeals Court issued its decision on the plaintiffs' appeal. *Jones II*, *supra* at 464. The court concluded that the motion judge's June 30, 2005, memorandum of decision and order, in which he had vacated the default judgment against Boykan under rule 60 (b), and ordered a new hearing to assess damages against the city, was erroneous as matter of law. *Id.* at 468. In the view of the Appeals Court, the case did not present exceptional circumstances to justify relief under rule 60 (b) (1) (excusable neglect provision), or rule 60 (b) (6) (catch-all provision). *Id.* at 469. The only possible ground for relief was rule 60 (b) (4), which applies "when a judgment is 'void' as matter of law." *Id.* However, because Boykan had actual, and thus adequate, notice of the complaint and a meaningful opportunity to be heard in answer to the claims raised, there was no jurisdictional error or due process violation to justify relief under rule 60 (b) (4). *Id.* at 469-470. The court ordered reinstatement of the 2004 judgment on all counts of the original complaint against the city and Boykan and in favor of the plaintiffs in the amount of $1 million, plus interest and costs.[4] *Id.* at 471.

On May 24, 2011, the defendants filed petitions for rehearing, which the Appeals Court denied on June 3, and on May 31, the defendants filed an application for further appellate review.

On May 26, 2011, the plaintiffs filed a motion in the Appeals Court for "[a]ppellants' fees," court costs, and expenses. The Appeals Court allowed the motion as to costs in the amount of $1,181.59, and directed the plaintiffs' counsel to file a motion for attorney's fees in the trial court in the first instance.

---

[4]We infer that the Appeals Court adopted the motion judge's earlier conclusions that (1) the city properly was considered a defendant under the plaintiffs' original complaint because the city had waived its right to assert a defense of misnomer; and (2) the plaintiffs intended their complaint to refer to 42 U.S.C. § 1983, instead of 42 U.S.C. § 1982, and thus should be treated as raising a claim under § 1983. *Jones* v. *Boykan*, 79 Mass. App. Ct. 464, 465 (2011) (*Jones II*). These issues are not before us in connection with our limited further appellate review, and we leave these conclusions undisturbed.

On June 24, 2011, the plaintiffs filed an application for further appellate review of the Appeals Court's order concerning attorney's fees and costs. Allowing both the defendants' and the plaintiffs' applications in part, this court granted limited further appellate review on November 29.

On January 17, 2012, the plaintiffs filed an emergency motion nunc pro tunc in the Superior Court to correct a clerical error, namely, the omission of Lucy's name from the August 9, 2004, default judgment. The motion judge allowed the motion, and an amended default judgment reflecting the addition of Lucy's name entered on March 30, 2012. The amended judgment, like the original, provided that the plaintiffs recover from the defendants $1 million, plus interest and costs. On August 1, we allowed the defendants' application for direct appellate review of this amended default judgment.

2. *Discussion.* In allowing the parties' respective applications for further appellate review, we limited our review to the two issues of assessment of damages raised by the defendants and attorney's fees raised by the plaintiffs. We also allowed the defendants' application for direct appellate review of the amended default judgment entered in the Superior Court pursuant to rule 55 (b) (2). We address each issue in turn.

a. *Assessment of damages.* Subsumed in the assessment of damages issue is the question whether the motion judge, in response to the defendants' second rule 60 (b) motion, properly vacated the award of damages against the city and ordered a new assessment hearing. "Rule 60 is not a substitute for the normal appellate process." J.W. Smith & H.B. Zobel, Rules Practice § 60.1, at 364 (2d ed. 2006), citing *Soja* v. *T.P. Sampson Co.*, 373 Mass. 630, 631 (1977). Rather, rule 60 (b) "requires a showing of 'extraordinary' circumstances." *Bowers v. Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 33 (1983), quoting *Ackermann* v. *United States*, 340 U.S. 193, 202 (1950). See J.W. Smith & H.B. Zobel, *supra* at 363, quoting *Care & Protection of Georgette*, 54 Mass. App. Ct. 778, 788 (2002) ("Rule 60 is to litigation what mouth-to-mouth resuscitation is to first aid: a life-saving treatment applicable in desperate cases"). The defendants here essentially used rule 60 (b) as a means of appeal when no extraordinary circumstances existed to justify

relief under the rule. They then exacerbated the problem by filing multiple rule 60 (b) motions,[5] a particularly inappropriate step to take where the material information underlying the several motions was available to the defendants at the time they filed the first motion.[6]

Nevertheless, insofar as the defendants' second rule 60 (b) motion claimed error in the hearing to assess damages, we conclude that the judge's ruling on the motion was appropriate. At the time the judge ruled on this second motion, no appeal had been docketed and the case remained in the Superior Court. In these circumstances, if the judge believed he had erred in connection with a previous ruling or decision, he retained the discretion to try to correct the error, because trial judges possess "the inherent authority . . . to 'reconsider decisions made on the road to final judgment,' " *Sullivan* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 401 (2003), quoting *Franchi* v. *Stella*, 42 Mass. App. Ct. 251, 258 (1997), and if a judge determines that "he has erred in an announced decision, he ought to correct his error while he still has the power [to do so]." *Franchi* v. *Stella*, *supra* at 258, quoting *Sheriff* v. *Gillow*, 320 Mass. 46, 49 (1946). Accordingly, in contrast to the dissent, *post* at 300-301, and to the Appeals Court, see *Jones II*, 79 Mass. App. Ct. at 470-472 & n.15, we think it was not error, but rather a correction of error, for the motion judge to order a rehearing on assessment of damages.

Rule 55 (b) (2) of the Massachusetts Rules of Civil Procedure governs assessment of damages for default judgments. The rule provides in relevant part:

> "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth

---

[5]The record reflects that the plaintiffs filed a third motion pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), on June 1, 2005.

[6]At oral argument before this court, the defendants' counsel claimed that the defendants had not received the transcript of the July 21, 2004, hearing to assess damages until November 1, 2004. Thus, they argue, they were justified in filing a second rule 60 (b) motion on November 2. The argument is hollow: the defendants were notified of the July, 2004, hearing to assess damages but elected not to attend; the Superior Court docket entries indicate that a notice of the result of the hearing was provided to them; and in any event, if the defendants had attended the hearing, they would have known precisely what had happened.

of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury when . . . and as required by statute."

Mass. R. Civ. P. 55 (b) (2), as amended, 423 Mass. 1401 (1996). Although the rule does not expressly mandate a hearing to assess damages for all default judgments, this court in *Hermanson* v. *Szafarowicz*, 457 Mass. 39, 49 (2010) (*Hermanson*), adopting in substance the view of the Appeals Court in earlier cases, made clear that "rule 55 (b) (2) is properly interpreted as requiring some factual findings concerning the basis of damages or other relief included within the default judgment." See *Bissanti Design/Build Group* v. *McClay*, 32 Mass. App. Ct. 469, 470-471 (1992), citing *Productora*, 376 Mass. at 832-835 (vacating judgment where "the judge, without making any findings, and based only upon documents and arguments of counsel, entered judgment for the plaintiff in the amount sought [because] a default does not concede the amount of damages"). See also *National Grange Mut. Ins. Co.* v. *Walsh*, 27 Mass. App. Ct. 155, 157-158 (1989) (concluding "absence of competent evidence of damages" where indemnity agreement required acceptance of "voucher or other evidence of such payment as prima facie evidence of the propriety thereof" and noting that it was incumbent on plaintiff to show either that claims were for sum certain or susceptible of mathematical calculation or to establish amount of damages). Compare *Kenney* v. *Rust*, 17 Mass. App. Ct. 699, 704-705 (1984) (interpreting rule 55 [b] [2] to require findings as to damages, but holding that transcript of hearing obviated need for findings because it showed judge made his damages assessment based on appropriate considerations).

The damages assessment in this case was inadequate. Similar to the *Hermanson* case, a default judgment entered but the claim was not one for a sum certain or one that could be computed with certainty because the injuries claimed by the plaintiffs were multiple and varied, including, in this case, physical and emotional injuries and the loss of a business. The record and, in particular, the transcript of the hearing on damages do not reflect that the motion judge had before him evidence sufficient to justify a

damages award of $1 million. Rather, as the judge acknowledged, his assessment was "based entirely on the request and representations of the plaintiffs' counsel" and the requested damages listed on the plaintiffs' civil action cover sheet. Thus, even though the defendants' inattention to this case was wholly inexcusable, the motion judge permissibly and, we conclude, appropriately vacated his previous damages award against the city and ordered a new hearing on damages in accordance with rule 55 (b) (2).[7]

We reach this conclusion because, as reflected in the text of rule 55 (b) (2), when a judge awards damages after entry of default, the judge has an obligation fairly to determine that the amount of damages has a reasonable basis in fact.[8] This obligation is important to protect the integrity of the litigation process and to advance the goal of fair treatment to all parties. There is no question that the nearly ten-year period that this case has been pending poses significant difficulties for the plaintiffs in seeking to prove their damages. On the other hand, the large damages award entered by the motion judge without a supporting evidentiary basis raises its own questions concerning both the integrity of the judgment and fairness to the defendants. As we discuss in the conclusion, *infra*, the delays in this case and their consequences are factors that may be taken into account by the judge in assessing damages,[9] but we conclude that in all the circumstances here, a remand of this case to the Superior Court for a new hearing to assess damages against both the city and Boykan is necessary.

---

[7]As indicated previously, in his June 30, 2005, decision and order, the motion judge ordered another hearing to assess damages only with respect to the city, because in the same order the judge vacated the judgment against Boykan as void under rule 60 (b) (4), because of insufficient service of process. The Appeals Court concluded that this ruling by the motion judge was error and ordered reinstatement of the 2004 judgment against Boykan. *Jones II*, 79 Mass. App. Ct. at 468, 471. The Appeals Court's decision concerning Boykan is not before us on limited further appellate review and the 2004 default judgment against Boykan, therefore, remains in effect. Nonetheless, for the same reasons that the motion judge's award of damages against the city cannot stand, the damages award against Boykan also must be vacated.

[8]The duty to make findings in assessing damages is in further support of the obligation. See *Hermanson* v. *Szafarowicz*, 457 Mass. 39, 49 (2010) (*Hermanson*).

[9]This is in keeping with the flexibility noted in *Hermanson*, 457 Mass. at 49 n.14, where we explained that "[t]he extent and nature of the findings will depend on the circumstances."

We add a final point in relation to the necessary proceedings on remand. At the scheduled but uncompleted assessment of damages hearings held on March 23 and March 30, 2006, the city correctly argued that although it had been defaulted, the plaintiffs were not entitled to recover damages where the complaint failed to state a legally valid claim on which relief could be granted. See *Productora*, 376 Mass. at 834-835, citing 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2688, at 282 (1973) ("even after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law"). See also *Nancy P.* v. *D'Amato*, 401 Mass. 516, 519 (1988) ("When . . . a defendant is defaulted, well-pleaded facts are deemed to be admitted, but a plaintiff may recover only to the extent the complaint states a claim for relief. . . . Thus the plaintiffs had the burden at trial of proving damages incurred as a result of wrongs within the scope of the claims alleged for which the law provides a remedy"); *Marshall* v. *Stratus Pharms., Inc.*, 51 Mass. App. Ct. 667, 670-671 (2001). As in the *Productora* case, here the issue of the damages for which the defendants are liable under the relevant allegations of the plaintiffs' complaint "remain[s] open during the hearing for the assessment of damages." *Productora, supra* at 835.

However, entry of a default precludes a defendant from raising affirmative defenses for the first time postdefault, because a defendant may not rely on an affirmative defense unless the defense was pleaded. See Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974). See also, e.g., *Abalan* v. *Abalan*, 329 Mass. 182, 183 (1952) (statute of frauds defense not pleaded and therefore waived), and cases cited; *Clamp-All Corp.* v. *Foresta*, 53 Mass. App. Ct. 795, 811-812 (2002) (default judgment precluded further litigation of affirmative defense of lack of consideration). Similarly, almost every defense listed in Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974), is waived unless raised by answer or motion and therefore may not first be raised after entry of a default. See Mass. R. Civ. P. 12 (h) (1), 365 Mass. 754 (1974). On remand, the parties and the judge will need to examine care-

fully the various claims alleged in the plaintiffs' original complaint in light of these principles.[10]

b. *Attorney's fees.* The plaintiffs contend that this court should award them attorney's fees under 42 U.S.C. § 1988 (1994 & Supp. II) as prevailing parties under § 1983.[11] "Our traditional rule and usual approach to the award of attorney's fees for litigation has been to follow the 'American Rule': in the absence of statute, or court rule, we do not allow successful litigants to recover their attorney's fees and expenses." *John T. Callahan & Sons* v. *Worcester Ins. Co.*, 453 Mass. 447, 449 (2009). As the plaintiffs point out, in civil rights cases, a statute does authorize the award of attorney's fees: 42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section[] 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."

Massachusetts law governs the procedure for requesting attorney's fees. See *T & D Video, Inc.* v. *Revere*, 450 Mass. 107, 114 (2007), and cases cited. The plaintiffs appear to be seeking attorney's fees with respect to their actions before the Superior Court, the Appeals Court, and this court.[12] These present different procedural issues.

A party seeking appellate attorney's fees and costs under

---

[10]For example, although it appears that all statute of limitations defenses have been waived by both the city and Boykan as a result of their defaults, the plaintiffs may not be entitled to recover damages against the city on their claim under § 1983, because a municipality is not liable under that statute based solely on a theory of respondeat superior, see, e.g., *Monell* v. *Department of Social Servs. of the City of N.Y.*, 436 U.S. 658, 691-692 (1978), and the allegations in the plaintiffs' complaint concerning the city appear to be limited to that theory. The substantive standard governing liability under § 1983 for Boykan, however, is different. It is also the case that the city may indemnify Boykan pursuant to G. L. c. 258, § 9.

[11]The plaintiffs seek double costs in their brief on further appellate review. However, in allowing the plaintiffs' application for further appellate review, we limited our review to the issue of attorney's fees, not costs. We adhere to that limitation here.

[12]Although the plaintiffs' brief appears to have requested attorney's fees in relation to the proceedings in this court, the plaintiffs may not collect such fees pursuant to § 1988 because they are not "prevailing part[ies]" under § 1983 with respect to the two issues for which we granted limited further appellate review.

§ 1983 must "note its request in [its] appellate brief, thereby giving notice to the appellate court and all other parties that it intends to seek fees and costs related to the . . . appeal in the event it is later determined to be a 'prevailing party.' " *T & D Video, Inc.* v. *Revere*, 450 Mass. at 115, citing *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). See *Beal Bank, SSB* v. *Eurich*, 448 Mass. 9, 12 (2006), and cases cited ("[I]t should be clear to litigants that it is imperative to state the request for appellate fees and expenses in the appellate brief. Failure to do so constitutes a waiver of one's entitlement to have the court consider the issue of appellate fees and expenses. . . . While an appellate court retains the authority to consider a waived request as a matter of discretion . . . it should exercise its discretion sparingly").

In Massachusetts, costs and attorney's fees are treated differently, and therefore parties must request costs and attorney's fees separately. See *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 321-322 (1992), and cases cited ("The usual rule in Massachusetts is that the litigant must bear his own expenses. . . . Certain taxable costs, however, are recoverable as a matter of course by successful litigants. G. L. c. 261, §§ 1 et seq."); *Goldberg* v. *Curhan*, 332 Mass. 310, 311-312 (1955), and cases cited ("Taxable costs are deemed full compensation to the prevailing party for the expense of conducting litigation, even though in fact such costs do not cover his legal or other expense"); *Burrage* v. *County of Bristol*, 210 Mass. 299, 300 (1911) ("The word 'costs,' as applied to proceedings in court, ordinarily means only legal or taxable costs, and does not include attorney's fees"). Contrary to the plaintiffs' argument, we do not interpret § 1988(b)'s reference to a "reasonable attorney's fee *as part of the costs*" as a statement of substantive law that attorney's fees are to be deemed "costs" in a civil rights case (emphasis added).[13] Rather, we read the statute simply as authorizing the award of attorney's fees to a prevailing party in a civil rights case, with the process for doing so to be determined by the governing procedural rules in the particular court. In this case, the parties do not dispute that the plaintiffs requested

---

[13]The plaintiffs cite no authority to support their argument, and we have found none.

"costs" and did not separately request attorney's fees in their appellate brief filed in the Appeals Court. Having omitted a specific request for attorneys' fees, the plaintiffs were not entitled to an award of such fees by that court.

However, as the Appeals Court suggested in its order granting the plaintiffs reasonable costs, if the plaintiffs emerge as prevailing parties after entry of default judgment on remand, the plaintiffs may seek attorney's fees in the Superior Court for proceedings before that court.

c. *Amended default judgment dated March 30, 2012.* We also granted the defendants' application for direct appellate review of the motion judge's March 30, 2012, entry of an amended default judgment correcting the omission of Lucy's name in the original 2004 default judgment. We conclude that the motion judge's reinstatement of the default judgment, as amended to add Lucy's name, was premature.

Rule 23 of the Massachusetts Rules of Appellate Procedure, as appearing in 367 Mass. 921 (1975), governs the issuance of the rescript to the lower court following the appeal. The rule provides, in relevant part:

> "The rescript of the court shall issue to the lower court twenty-eight days after the date of the rescript unless the time is shortened or enlarged by order. The timely filing of a petition for rehearing or of an application for further appellate review will stay the rescript until disposition of the petition or application unless otherwise ordered by the appellate court. If the petition or application is denied, the rescript shall issue forthwith unless the appellate court or a single justice orders otherwise. If an application for further appellate review is granted the rescript of the Appeals Court shall not issue to the lower court."

"[T]he reason for the twenty-eight day delay in issuance of the rescript to the lower court is to accommodate a party's twenty-day right to seek further appellate review of the case by this court pursuant to G. L. c. 211A, § 11, and rule 27.1." *Foxworth* v. *St. Amand*, 457 Mass. 200, 205-206 (2010). To that end, "if the [further appellate review] application is allowed, the Appeals Court's rescript does not . . . issue, but instead, a rescript

from this court will issue pursuant to rule 23 at the time we issue our decision in the case." *Id.* at 206. In this case, the Appeals Court issued its decision on May 11, 2011, and the defendants petitioned for rehearing on May 24 and filed their application for further appellate review on May 31; both the petition and the application were timely under the governing rules. See Mass. R. A. P. 27, as amended, 410 Mass. 1602 (1991); Mass. R. A. P. 27.1 (a), as amended, 367 Mass. 922 (1975). These actions stayed the issuance of the Appeals Court's rescript until disposition of the petition and application. When this court granted limited further appellate review pursuant to the final sentence of rule 23, the Appeals Court was foreclosed from issuing its rescript to the Superior Court. Accordingly, the Superior Court did not have jurisdiction to entertain a motion to amend the earlier default judgment, even to correct a clerical mistake, at the time the motion judge acted in March of 2012. However, on remand of this case, following issuance of the rescript of this court, a judge in the Superior Court may order the clerical error to be corrected.[14]

In any event, it is unnecessary to unravel further the circuitous arguments made by the defendants on direct appellate review, as we now remand the case for a hearing to assess damages, following which a new judgment will enter.

*Conclusion.* The adjective "tortuous," frequently used by the motion judge in the March, 2006, hearings to describe the procedural history of this case, is certainly well placed today, over six years later. The incident giving rise to this litigation occurred more than thirteen years ago, and as the Appeals Court noted, ordering a new hearing will require the plaintiffs to prove damages at a time when the evidence of those damages has likely diminished, if not to some extent disappeared. *Jones II,* 79 Mass. App. Ct. at 471 n.15. We encourage the Superior Court judge to take into account this unusual burden in assessing damages so long after the harms occurred.

In No. 11276, the amended judgment dated March 30, 2012, is vacated. In No. 11095, the default judgment dated August 9, 2004, is vacated, and the matter is remanded to the Superior

---

[14]The record before us appears to indicate that the defendants do not object to the correction itself.

Court for further proceedings to assess damages consistent with this opinion.

*So ordered.*

SPINA, J. (dissenting, with whom Ireland, C.J., joins). I disagree with the court for the reasons stated in the opinion of the Appeals Court. *Jones* v. *Boykan*, 79 Mass. App. Ct. 464 (2011).

The court states that a judge should be able to reconsider the correctness of his decision on a motion under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974). *Ante* at 294. There are limits as to what a judge may do in that regard, and what occurred here went beyond those limits.

Final judgment entered on August 9, 2004, and the defendants did not appeal. The first motion under rule 60 (b) was denied on October 22, 2004, and there was no appeal from the denial of that motion. The second motion under rule 60 (b) was filed on November 2, 2004. The second motion requested reconsideration of the issues raised in the first motion, but it also raised new issues, including the issue of damages. The second motion was allowed on June 30, 2005, on the basis of the new issues. Thus, the judge did not vacate the judgment based on his reconsideration of a prior order. He vacated the judgment based on issues raised for the first time in the second rule 60 (b) motion.

If the defendants wanted to be heard on damages, they should have appeared at the hearing to assess damages. Failing that, they could have appealed the judgment. They did not appeal. As the court notes, rule 60 is not a substitute for the normal appellate process. See *Amerada Hess Corp.* v. *Garabedian*, 416 Mass. 149, 156-157 (1993); *Pentucket Manor Chronic Hosp.* v. *Rate Setting Comm'n*, 394 Mass. 233, 236 (1985). But even allowing for consideration of a rule 60 (b) motion that raises the issue of damages in circumstances involving a default judgment, that issue, indeed *all* the new issues, should have been raised in the first rule 60 (b) motion. Because a motion under rule 60 (b) is not a proper vehicle for asserting a previously overlooked legal argument, see *Fox of Boylston St. Ltd. Partnership* v. *Mayor of*

*Boston,* 418 Mass. 816, 819 (1994); J.W. Smith & H.B. Zobel, Rules Practice § 60.15, at 389-390 (2d ed. 2007), it cannot be a proper vehicle for asserting a legal argument that had been overlooked in a previous rule 60 (b) motion. The new issues should not have been considered, and therefore they should not have served as the basis to vacate the judgment.

The pavement "on the road to final judgment" stopped when final judgment entered. *Ante* at 292. The judge's authority to correct any error sua sponte ended at that time. The court's statement that the judge retained such authority because the case "remained in the Superior Court," *id.*, is unfaithful to our jurisprudence concerning the finality of judgments, and it encourages misuse of postjudgment procedures.

I respectfully dissent.