In 2002, the plaintiff filed a complaint in Superior Court against her brother, Michael J. O'Brien. The complaint alleged that O'Brien had failed to provide the plaintiff with her share of the income from a property they owned as tenants in common located at 44-46 Central Street in Manchester-by-the-Sea ("the property" or "their property"). The complaint also contained a chart with damage calculations. Twenty-three days after the plaintiff served the complaint on O'Brien, she requested a default judgment under Mass.R.Civ.P. 55(b)(1), as amended, 423 Mass. 1402 (1996). The judge instructed the clerk to schedule a damages hearing, ostensibly in accordance with Mass.R.Civ.P. 55(b)(2), as amended, 423 Mass. 1402 (1996),[4] and the clerk sent the parties notices to appear for that hearing. However, before the hearing could be held, the clerk entered a default judgment against O'Brien in the amount of $283,226.96, representing the plaintiff's fifty per cent share of the sum total of eighteen specified amounts she alleged O'Brien owed her by withholding her share of the rental value for the house they owned (the 2003 judgment). The plaintiff obtained an execution and began the process of levying against the property, but she later ordered the sheriff to suspend the levy. However, she did subsequently carry forward the levy, and the letter doing so is recorded in the appropriate registry of deeds.
The plaintiff never executed the levy on the property during O'Brien's lifetime. According to an affidavit submitted in the later proceedings which are the subject of the present appeal, the substance of which was not materially challenged, there was no need to execute the levy because she and O'Brien had agreed that, if he did not contest the complaint, the plaintiff and her husband would care for him (providing food, lodging, transportation, and other expenses), using a series of loans made by the plaintiff's husband to the plaintiff and O'Brien. The plaintiff and O'Brien granted the plaintiff's husband mortgages on the property to secure repayment of two of these loans.[5] The plaintiff further agreed that O'Brien, then in declining health, could continue to live at their property, which the plaintiff renovated, including making it handicapped accessible for him. O'Brien never contested the complaint or the judgment, and the plaintiff and her husband followed through with the loans, care, and house renovations, all to his benefit. O'Brien died in 2011 with only one significant potential asset: his one-half interest in the property. Two claims were made against the estate: the 2003 levied default judgment obtained by the plaintiff, and MassHealth's claim pursuant to G. L. c. 118E, §§ 31 & 32, to recover funds spent on O'Brien's care. The estate's assets are insufficient to satisfy both claims. In 2014, following a hearing in the Probate and Family Court (Probate Court) on the two claims, judgment entered declaring that the plaintiff's claim on her levied judgment held priority over MassHealth's claim. Neither MassHealth nor O'Brien's estate-which throughout the proceeding disavowed to the Probate Court judge and the plaintiff any intention to challenge the plaintiff's 2003 judgment-appealed from the Probate Court judgment. Several months prior to that judgment, O'Brien's executrix, joined by MassHealth as an intervener,[6] had filed in the Superior Court a motion to vacate the 2003 default judgment pursuant to Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974). The motion was stayed pending the Probate Court's resolution of the claim priority issue. After the Probate Court judgment was entered, a Superior Court judge vacated the stay and held a hearing on the motion to vacate the 2003 default judgment, in which no live testimony was permitted.
In his July 22, 2016, memorandum and order granting the motion to vacate, the judge, citing our earlier decision (see note 5, supra ), noted that rule 60(b)(4) imposes no hard time limit to vacate judgments that are "void."[7] Citing Hermanson v. Szafarowicz, 457 Mass. 39 (2010), the judge stated that the plaintiff's calculation of damages "presented a number of substantial questions" concerning the damages being sought and ruled that it was error for the clerk to enter default judgment without a hearing. This error, the judge concluded, rendered the 2003 judgment void from its inception. Accordingly, the judge vacated the 2003 judgment. The plaintiff has appealed from that order. Because we conclude that the 2003 judgment was not void, we reverse and order it reinstated.
Discussion. A judgment is void under rule 60(b)(4) if "the court from which it issues lacked jurisdiction over the parties, lacked jurisdiction over the subject matter, or failed to provide due process of law." Harris v. Sannella, 400 Mass. 392, 395 (1987). However, a judgment issued erroneously does not necessarily render it "void" within the meaning of rule 60(b)(4). See Reporter's Notes to Mass.R.Civ.P. 60(b) ("An erroneous judgment is not a void judgment"). "[A] void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed." Harris, supra at 395, quoting from Lubben v. Selective Serv. Sys., 453 F.2d 645, 649 (1st Cir. 1972). Furthermore, " Rule 60 does not provide for general reconsideration of an order or a judgment.... Nor does it provide an avenue for challenging supposed legal errors, nor for obtaining relief from errors which are readily correctible on appeal." Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Commn., 394 Mass. 233, 236 (1985) (citations omitted). "Rule [60(b) ] may not be used as a substitute for a timely appeal." Harris, supra at 395, quoting from Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).[8]
In Hermanson, 479 Mass. at 49, on which the motion judge relied heavily, the Supreme Judicial Court explained that Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996), "should be construed to require findings of fact when a judge is determining damages in connection with a default judgment." While the court vacated the default judgment for failure to hold a hearing on damages or make factual findings, id. at 50, as the plaintiff correctly notes, it did not vacate the default judgment as "void" under rule 60(b)(4). See id. at 45 n.9. Thus, while the judge in the present case concluded that the Superior Court erred in failing to hold a hearing or make factual findings on the issue of damages, such a conclusion does not render the 2003 judgment void. See O'Dea v. J.A.L., Inc., 30 Mass. App. Ct. 449, 455 (1991) (concept of void judgments is narrowly construed). Neither the defendant nor the intervener has cited to us any case law, and we are not aware of any, holding that failure to hold a hearing on damages prior to issuing a default judgment renders a judgment void. As such, it was error for the judge to vacate the 2003 judgment as void under rule 60(b)(4).
As rule 60(b)(4) is inapplicable here, the only other available method of attacking the judgment is through a rule 60(b)(6) motion. See Bromfield v. Commonwealth, 400 Mass. 254, 256 (1987) (relief under 60[b][6] only available when ground for relief does not fall under 60[b][1]-[5] ). A court may set aside a judgment for "any other reason justifying relief from the operation of the judgment" if a motion is brought "within a reasonable time." Mass.R.Civ.P. 60(b)(6), 365 Mass. 828 (1974). Here, the executrix did not file the motion to vacate the 2003 judgment until 2014, and then only at MassHealth's urging, roughly three years after O'Brien's death, an eleven-year delay. Such a delay is unreasonable "where [the defendant] was, or at least reasonably should have been, aware of the grounds on which [the motion to vacate] could have been brought long before bringing it." Owens v. Mukendi, 448 Mass. 66, 68 (2006). Furthermore, as noted, rule 60(b)(6) cannot be used as a substitute for a timely appeal. See Bromfield, supra at 257. Nor is this a case where "extraordinary circumstances" require us to set aside the 2003 judgment. Ibid. See Artco, Inc. v. DiFruscia, 5 Mass. App. Ct. 513, 517 (1977).
Under ordinary circumstances, we would likely remand this case back to the Superior Court for a hearing to assess damages. See Jones v. Boykan, 464 Mass. 285, 294 (2013), and Hermanson, supra. However, for three reasons, this case is markedly different from Jones and Hermanson. First, the aggrieved defendants in both Jones and Hermanson filed reasonably timely motions for relief from the default judgments entered against them, and then timely appealed from the denials of those motions-the proper avenue to challenge judgments thought to be erroneous.[9] Second, in the present matter the Probate Court already determined in 2014 that the 2003 judgment in favor of the plaintiff enjoys priority over MassHealth's claim against O'Brien's estate. Not having appealed the Probate Court judgment, both MassHealth and the estate remain bound by it on the question of priority. Vacating the Superior Court judgment would necessarily vitiate the plaintiff's claim priority against the estate, thus rendering the Probate Court judgment of no effect. Third, as noted, in the present case the motion to vacate was not brought "within a reasonable time," as rule 60(b)(6) requires. O'Brien's executrix, who had been his life partner, knew of the 2003 judgment at least as early as July, 2006. See note 4, supra. Owing entirely to O'Brien's, and his estate's, protracted and purposeful inattention to this suit, and the motion to vacate the judgment having been brought only after MassHealth's defeat in the Probate Court in its quest for claim priority (during which the estate continued to disavow any intent to challenge the plaintiff's 2003 Superior Court judgment), the action now spans more than sixteen years. Over that period, the plaintiff-in reasonable reliance on her fulfilled agreements with her late brother concerning her care of him, and the property renovations accomplished with borrowed money-changed her position to her detriment. Given this substantial passage of time, it would be manifestly unfair and unjust to vacate the 2003 judgment and require the plaintiff to present, on remand, evidence necessarily stale, lost, or otherwise unavailable through no fault of her own.[10] Here, the "balance between serving the ends of justice and preserving the finality of judgments," Harris, supra at 395, weighs heavily in favor of respecting the finality of the 2003 judgment.
Accordingly, the Superior Court's order of July 28, 2016, vacating the default judgment entered on February 21, 2003, is reversed. The 2003 judgment is reinstated in all respects, with all due ministerial modifications, including interest and costs.
So ordered.
Reversed.

Subsequent amendments to rules 55(b)(1) and (2) are not material to our decision.

One such loan, for $50,000, was memorialized in a June 26, 2006, promissory note signed on O'Brien's behalf by his life partner, Patricia Ambrose, who would later be appointed executrix of his estate. The note specifies that it is secured by a first mortgage on the property "and [is] subject to the [2003] judgment."

The plaintiff appealed the judge's allowance of MassHealth's motion to intervene. On an interlocutory appeal allowed by the single justice, a panel of this court affirmed the lower court's ruling in an unpublished decision issued pursuant to Appeals Court rule 1:28. Maestranzi v. O'Brien, 88 Mass. App. Ct. 1109 (2015).

In a footnote in our earlier decision, the panel stated that "the Superior Court judge has authority to consider the rule 60(b)(4) motion despite the lengthy period of time since the judgment entered. See Bowers v. Board of Appeals of Marshfield, 16 Mass. App. Ct. 29, 31 (1983) ('Notwithstanding the powerful interest in finality of judgments, a motion for relief from a judgment which was void from its inception lies without limitation of time')." The panel did not elaborate further on this point.

The court in Harris noted that "[p]roperly applied[,] Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." 400 Mass. at 395.

The defendants in Jones filed a rule 60(b) motion approximately one week after receiving notice of the default judgment, Jones, supra at 287-288; the defendant in Hermanson filed his motion approximately seven months after the default judgment issued. Hermanson, supra at 42-43.

Indeed, the motion judge rightly acknowledged the difficulties the plaintiff faced in supplying evidence corroborating her more than thirteen year old agreement with her brother, noting that her sole source of additional corroboration was her brother, who had died about three years before the filing of the motion to vacate the judgment.