NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-566

JAMES APPLEYARD & another[1]

vs.

DANA R. ROGERS & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Defendants Dana R. Rogers and Pre Owned Auto Sales, Inc. (Rogers), operated a used car dealership funded through credit extended by the plaintiffs, James and Maureen Appleyard (Appleyards). The Appleyards filed a complaint in the Superior Court and obtained a default against Rogers for money owed under a promissory note. A damages assessment hearing followed, and Rogers appeared in opposition to the amount claimed. During the hearing, the judge examined the promissory note as well as the parties' course of performance under the credit arrangement. A default judgment, as amended, entered in favor of the Appleyards

---

[1] Maureen Appleyard.

[2] Pre Owned Auto Sales, Inc. The first amended complaint also named John R. Adams as a defendant, but the claims against him were resolved through summary judgment in the trial court and he is not part of this appeal.

for $93,214.  Rogers challenges the damages amount on appeal.
We vacate the amended default judgment and remand for
recalculation of damages.

Background.  On July 12, 2013, Rogers signed a promissory
note promising to pay the Appleyards $200,000, "or so much
thereof as may be advanced, with interest payable in arrears on
the unpaid principal balance" at an annual interest rate of
twelve percent.  Unspecified payments of "interest only" would
commence immediately with the principal sum of $200,000 due in
three months.  In the event of a default under the promissory
note, the Appleyards would be entitled to an interest rate of
twenty-four percent as well as reasonable attorney's fees and
costs.

The maturity date for the promissory note passed
uneventfully, but the parties continued their credit
relationship over the next five years.  Through that
arrangement, the Appleyards deposited $200,000 into a TD Bank
account, in their names, with the intended purpose that the
funds would be available for use by Rogers to purchase
automobiles for resale.  The Appleyards authorized disbursements
from the account to enable Rogers to purchase vehicles.
Following each purchase, the Appleyards held the title while the
vehicle remained in Rogers's inventory.  On the sale of a
vehicle from the inventory, Rogers notified the Appleyards,

2

obtained the title, and replenished the TD Bank account with the principal amount originally allocated to fund the purchase.  In addition to paying off the principal through the sale of each vehicle, Rogers paid monthly interest on the total amount that the Appleyards deposited into the TD Bank account.  Under this arrangement, the Appleyards gradually increased the funds deposited from $200,000 to amounts that eventually reached $356,580.  Through an e-mail dated August 1, 2018, the Appleyards notified Rogers of their intent to end the credit relationship and thereby terminate access to the TD Bank account by December 31, 2018.

After his access to the TD Bank account ended on December 31, Rogers continued making payments to the Appleyards as vehicles were sold from the accumulated inventory.  Between January 2019 and September 2020, Rogers paid off the outstanding principal balance "to within a few hundred dollars."  Despite the payments in 2019 and 2020 and the ultimate repayment of nearly the entire principal, the Appleyards sent a notice of "default" to Rogers on April 23, 2019.  The Appleyards claimed that for the months of February, March, and April 2019, Rogers failed to make separate monthly interest payments as had been done for the previous five years in connection with the TD Bank account.  These alleged missed payments amounted to $21,374.55 after the Appleyards invoked a twenty-four percent default rate

of interest and used the maximum amount that had previously been available in the TD Bank account ($356,580) as the initial basis for the interest calculation.

On October 22, 2020, the Appleyards filed a complaint in the Superior Court. They alleged that Rogers signed a promissory note promising to pay the Appleyards $200,000, and Rogers failed to make payments as required. Rogers did not file an answer, and the Superior Court entered a default under Mass. R. Civ. P. 55 (a), 365 Mass. 822 (1974). Rogers unsuccessfully sought to vacate the default, and the Superior Court scheduled a damages assessment hearing. At that hearing, the judge reviewed the language of the promissory note, spreadsheets on payments, e-mail correspondence, affidavits, and testimony. Rogers claimed that he owed at most $3,843.28, asserted the Appleyards were "using the wrong number to apply the interest," and denied the loan was ever in default. The judge accepted the Appleyards' calculations and awarded damages of $93,214 (amount including interest, costs, and attorney's fees). On appeal, Rogers disputes the assessed damages and claims the judge erred in calculating interest, permitting a usurious rate of interest, and increasing the award of attorney's fees.

Discussion. "The measure of damages is a question of law reviewed de novo on appeal." Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 424 (2005). "The

4

usual rule for damages in a breach of contract case is that the injured party should be put in the position [she] would have been in had the contract been performed." Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 880 (2000). It is incumbent on the plaintiff "to establish the amount of its damages." National Grange Mut. Ins. Co. v. Walsh, 27 Mass. App. Ct. 155, 158 (1989). "[W]hen a judge awards damages after entry of default, the judge has an obligation fairly to determine that the amount of damages has a reasonable basis in fact." Jones v. Boykan, 464 Mass. 285, 294 (2013).

In the present case, the judge determined that the language of the promissory note was ambiguous as to the method of calculating interest and thus looked to parol evidence to ascertain the parties' intent. The parol evidence rule "bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing." Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 496 (1997). Before the parol evidence rule comes into operation, "the court must be sure that it has before it a written contract intended by the parties as a statement of their complete agreement." New England Factors, Inc. v. Genstil, 322 Mass. 36, 40 (1947), quoting Kesslen Shoe Co. v. Philadelphia Fire & Marine Ins. Co., 295 Mass. 123, 129 (1936). For the purpose of this preliminary determination, "the parties may

5

present proof beyond the writing itself." Ryder v. Williams, 29 Mass. App. Ct. 146, 149 (1990). Also, the parol evidence rule does not apply to a "subsequent agreement implied by the conduct of the parties." Genstil, supra.

We agree with the judge that the promissory note, with an overdue maturity date and silence as to payment terms, clearly did not represent the entire agreement of the parties. The promissory note was the origin, but not the totality, of the parties' contract rights and obligations. While "[p]romissory notes are contracts and are analyzed as such," JPMorgan Chase & Co. v. Casarano, 81 Mass. App. Ct. 353, 356 (2012), when "an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." Restatement (Second) of Contracts § 202(4) (1981). Because the parties clearly intended a credit relationship that would last well beyond the October 2013 maturity date of the promissory note, the judge concluded "that there was a common and mutual understanding between the parties that interest was to be paid on the total amount of the funds that were available to [Rogers] in the [TD Bank] loan account." That conclusion is supported by the evidence up until December 31, 2018, when the mutual

6

understanding came to an end through the Appleyards' unilateral decision to terminate.

The judge erred, however, by failing to consider the legal significance of the Appleyards' termination of the credit agreement on that date.  By sending an e-mail to Rogers "seeking to conclude the practice of lending on automobile titles" effective on December 31, the Appleyards terminated an open-ended credit agreement that had been functioning for five years.  Where, as here, an agreement lacks any specified duration, "[t]he agreement between the parties must be construed as one that was terminable at will by either party upon reasonable notice."  Phoenix Spring Beverage Co. v. Harvard Brewing Co., 312 Mass. 501, 506 (1942).  This termination by the Appleyards had legal consequences that should have been considered by the judge as part of his "obligation fairly to determine that the amount of damages has a reasonable basis in fact."  Jones, 464 Mass. at 294.

As of the termination date of December 31, 2018, the previous course of performance that shaped the contours of the credit arrangement for more than five years no longer controlled the obligations of the parties.  From that date forward, Rogers no longer had access to the TD Bank account funds and should only have been paying interest on the unpaid principal balance that remained.  "The reason for this approach is manifest.

Interest is compensation for the deprivation of the use of principal. . . . Once the use of part of the principal is returned to the lender, there is no longer any deprivation which calls for recompense."  Plasko v. Orser, 373 Mass. 40, 43 (1977).  "[I]t would be unjust to permit the lender to receive further interest on the amount that has been paid" by Rogers.  Id.  On remand, monthly interest must be calculated at the agreed on annual rate of twelve percent based on the unpaid principal balance as of December 31, 2018, as reduced by payments made from that date forward.

We agree with Rogers that the evidence before the judge did not support the twenty-four percent default rate of interest.  As the promissory note in the instant case provides, the rate of twenty-four percent is only available when there is a "default in payment" or performance.  "The ordinary meaning of the word 'default,' when used with respect to an obligation created by contract, is failure of performance.  When used with reference to an indebtedness it means simply nonpayment."  Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 58 (1991), quoting Bradbury v. Thomas, 135 Cal. App. 435, 443 (Cal. Dist. Ct. App. 1933).  The undisputed record here shows that Rogers made payments to the Appleyards through September of 2020 and paid off the outstanding principal balance "to within a few hundred dollars."  In the absence of evidence that Rogers

8

defaulted, the judge must apply the twelve percent interest rate that "is consistent with the reasonable expectation of the parties." Downer & Co., LLC v. STI Holding, Inc., 76 Mass. App. Ct. 786, 797 (2010).

The Appleyards advanced a curious theory of "default" that is unsupported by any evidence. At the hearing on damages, Maureen Appleyard testified, "[T]he loan is in default for two reasons; one, because we haven't received the interest, and two, because we requested that it be paid off by December 31st of 2018, and it wasn't." Contrary to this assertion, the Appleyards received substantial payments after December 31, 2018, that could have been applied to interest, but the Appleyards chose to apply the payments to principal. For example, during the first several months of 2019, the Appleyards received substantial payments from Rogers, unilaterally apportioned payments to principal, and concluded that interest had not been paid. In the meantime, the alleged "unpaid" interest (on the inaccessible TD Bank account) ballooned from month to month, supposedly triggered the default rate of twenty-four percent interest, and ultimately formed the basis for the current litigation.

The Appleyards' method of allocating payments after December 31, 2018, is inconsistent with Massachusetts law and cannot justify a default rate of interest. "It has long been

9

the rule in this Commonwealth that, absent any express agreement to the contrary, partial payments on an interest bearing debt are applied first to the interest due, with any excess payment to be applied to reduce the principal debt." Plasko, 373 Mass. at 42. There is no evidence that by December 31, 2018, the parties had an express agreement to the contrary. Had the Appleyards followed the long-standing rule in Plasko and allocated payments "first to the interest due," interest would have been paid, and there would not have been any basis for a default rate of interest. Id. at 43.

Also, the record does not support Maureen Appleyard's contention that there was a demand for immediate payment of the entire outstanding principal. One would think that if such a demand had been made it would have been in the e-mail terminating the credit arrangement, but there is no such demand in that e-mail or any that followed. Nor is there any evidence that Rogers agreed to pay the outstanding principal balance by December 31, 2018; without such an agreement, lack of full payment on the outstanding principal does not constitute a default. Thus, a close examination of the record shows that the alleged "default" under the promissory note (as of April of 2019) was contrived by the Appleyards' allocation of payments to principal and not by a failure of Rogers to pay during this period.

To the extent that Rogers is seeking to be credited for interest payments he made prior to December 31, 2018, we reject that claim.  He argues that the plain language of the promissory note shows that interest should always have been limited to the amount drawn from the TD Bank account.  While there is merit to Rogers's current view of the language in the promissory note, we are not at liberty to ignore the parties' course of performance over five years.  The undisputed evidence before the judge showed that up until December 31, 2018, Rogers paid interest every month for five years on the maximum amount on deposit in the TD Bank account -- whether or not the Appleyards disbursed those funds to Rogers.  The wisdom or rationale for that business arrangement is beyond the scope of our review because "it is not the function of the judiciary to change the obligations of a contract which the parties have seen fit to make."  11 R.A. Lord, Williston on Contracts § 31:5 (4th ed. 2012).  "It is not the role of the court to alter the parties' agreement."  Rogaris v. Albert, 431 Mass. 833, 835 (2000).

On appeal, the Appleyards protest that it is "frivolous" for Rogers to dispute the default in payment and the interest charges because Rogers's liability was already established by the default under Mass. R. Civ. P. 55 (a).  The Appleyards argue that this appeal is nothing more than an "end run" around the judge's denial of the motion to vacate the procedural default.

11

We disagree. When damages are awarded following a procedural default, "the judge has an obligation fairly to determine that the amount of damages has a reasonable basis in fact." Jones, 464 Mass. at 294. Rogers's failure to answer the claim and the entry of the default under Mass. R. Civ. P. 55 (a), did not relieve the judge of this obligation, which is designed "to protect the integrity of the litigation process and to advance the goal of fair treatment to all parties." Jones, supra. Rogers's claim is neither "frivolous" nor an "end run" and merits a remand for a fair determination of damages.

Other arguments. Rogers also claims that the judge erred by amending the judgment on a motion of the Appleyards and by declining to address a usury argument raised by Rogers. We disagree. As the docket entries indicate, the judge allowed the Appleyards' motion "for the reasons stated on the record." Rogers's claim fails because he has not provided the record referenced by the judge. See Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019) (appellant has obligation to provide record appendix containing parts of record relevant to issues on appeal). As to the usury argument, we need not reach the merits of that claim because the twelve percent rate of interest shall apply on remand. Also, we find no error in the judge's conclusion that Rogers waived his belated usury claim

12

because the "Appleyards were deprived of a fair opportunity to adduce evidence at the hearing on this point."

Conclusion.  The entry of default is affirmed, the May 17, 2022 amended default judgment is vacated, and the matter is remanded to the Superior Court for recalculation of damages consistent with this memorandum and order.[3]

So ordered.

By the Court (Sullivan, Shin & Hodgens, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  May 16, 2023.

---

[3] The Appleyards' request for appellate attorney's fees is denied.
[4] The panelists are listed in order of seniority.